ITALIANO et al., Appellants,

v.

COMMERCIAL FINANCIAL CORP., Successor In Interest
to the Dollar Savings & Trust Company, Appellee.

[Cite as *Italiano v. Commercial Fin. Corp.*, 148 Ohio App.3d 261, 2002-Ohio-3040.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01–C.A.–128.

Decided June 5, 2002.

Clair M. Carlin, LLC, and Clair M. Carlin, for appellants.

Urban Co., L.P.A., and Bruce W. Bennett, for appellee.

WAITE, Judge.

{¶ 1} Appellants Dominic Italiano, Jr. and Helen Italiano appeal the dismissal of their complaint to quiet title and also appeal the decision to grant summary judgment to appellee Commercial Financial Corp. on its counterclaim for declaratory judgment on a commercial note and mortgage lien for $128,261.46 plus interest. A 1993 judgment entry, which ruled that appellee's predecessor in interest was owed $128,261.46 on the note, has res judicata effect in this case. For this reason, the judgment of the trial court is affirmed.

{¶ 2} This case concerns a commercial line of credit obtained by appellants in 1991. Appellants operated a business called Used Car Corner at that time. On July 12, 1991, the business obtained a $150,000 line of credit from Dollar Savings and Trust Co. ("Dollar Savings"). The line of credit was secured in part by a mortgage deed on two parcels of real estate owned by appellants and located in Mahoning County. Parcel 1 consisted of lots 44127 and 44128 situated at 4003 Market Street in the city of Youngstown. Parcel 2 was listed as 3635 Sugarbush, Canfield, Ohio. The mortgage deed was recorded July 17, 1991.

{¶ 3} In 1993, Society National Bank, which held a senior priority mortgage on the Sugarbush property, began foreclosure proceedings. On April 1, 1993, appellee filed a cross-claim in the foreclosure action asserting its junior mortgage on the property and requesting judgment in the amount of $128,261.46 plus interest, which represented the outstanding balance due on the $150,000 line of credit.

{¶ 4} On July 16, 1993, the Mahoning County Court of Common Pleas filed a judgment entry and decree in foreclosure. The court found that there were four liens on the property, with the mortgage from Dollar Savings being the lowest priority lien. The court also made the following finding:

{¶ 5} "9. The Court finds in accordance with the Cross–Claim of the DOLLAR SAVINGS AND TRUST COMPANY that it has against the real estate a valid mortgage lien in the amount of $128,261.46 plus interest from March 30, 1993, at DOLLAR'S prime rate plus 2.0% per annum."

{¶ 6} On December 10, 1993, the Mahoning County Court of Common Pleas filed a confirmation of sale and deficiency judgment. Although the property was sold for $305,000, no proceeds were available to cover any portion of Dollar Savings' lien.

{¶ 7} At some unknown date, National City Bank succeeded to the interests of Dollar Savings. On July 21, 1995, National City Bank assigned the $150,000 line of credit, along with the mortgage securing it, to appellee. This assignment was recorded on October 6, 2000.

{¶ 8} On June 22, 2000, appellants filed a quiet title action in the Mahoning County Court of Common Pleas. The complaint references an "exhibit A," which purports to identify the property in question. The exhibit is not in the record, however. The complaint does reference Dollar Savings' mortgage deed, and presumably the quiet title action relates to parcel 1 of that deed, since parcel 2 was already sold in foreclosure. The complaint alleged that any claim appellee might have in the property was barred because the amount due on the underlying loan was paid off in a settlement agreement in 1995. The complaint alleged that appellants transferred accounts receivable and motor vehicles to Dollar Savings in an amount sufficient to pay the loan.

{¶ 9} Also on June 22, 2000, appellants filed a motion for summary judgment. The only attachment to the motion was an affidavit of appellants' attorney, Clair Carlin, succinctly stating that he attended meetings on June 8, 1992, and September 29, 1992, in which appellants turned over in excess of $150,000 in automobiles and receivables to representatives of National City Bank. No mention is made of any payment or settlement agreement in 1995, as alleged in appellants' complaint.

{¶ 10} On October 6, 2000, appellants filed an addendum to their motion for summary judgment. Appellants attached a copy of the December 10, 1993, confirmation of sale, arguing that the decree never reduced to judgment the prior finding that appellants owed Dollar Savings the amount of $128,261,46. Appellants concluded that there was no prior "final judgment" on which appellee could base its claim that it had an interest in the property presently in question.

{¶ 11} Appellee filed a response to the motion, arguing that the amount of its lien on the property was determined by the July 16, 1993, judgment entry. Appellee also argued that the December 10, 1993, judgment did not affect Dollar Savings' mortgage on parcel 1, citing the following section of the entry:

{¶ 12} "6. The subject real estate is hereby released from operation of the following mortgage without affecting the validity of the mortgage as to any other real estate:

{¶ 13} "(1). Mortgage to Dollar Savings and Trust Company filed July 17, 1991, recorded at O.R. volume 1328, page 7."

{¶ 14} Appellee argued that only parcel 2 was at issue in the 1993 litigation, and thus, the mortgage on parcel 1 has always remained as a valid lien on the property.

{¶ 15} Following this response, appellants supplemented their motion for summary judgment. The supplement included an affidavit of Toxanna Simms, who claimed that she purchased an automobile from Used Car Corner in 1992 and paid off the loan on the vehicle at National City Bank in 1993 or 1994. The supplement also included an affidavit of Keith Riggs, former manager of the Canfield Auto Auction, who stated that he had sold cars at some unknown date that had been taken from Used Car Corner by Dollar Savings.

{¶ 16} Appellants' motion for summary judgment was overruled on December 18, 2000.

{¶ 17} On January 16, 2001, appellee filed a two-count counterclaim. The first count sought judgment in the amount of $128,261.46, plus interest from March 30, 1993. This was based on the July 16, 1993, judgment entry. The second count asked, in the alternative, for a monetary judgment of $213,481.71 on the unpaid line of credit, plus interest from December 15, 2000. Appellee attached computation printouts of the applicable interests rates, payments, and amounts due on the loan from March 30, 1993, until December 15, 2000.

{¶ 18} On April 3, 2001, appellee filed a motion for summary judgment on its complaint. Appellee argued that there was no dispute that appellants had entered into the line of credit and had executed the mortgage, that they had no documents showing that the note had been satisfied, and that they had not attempted to make any payment on the note after July 16, 1993. Appellee argued that the amount due on the note was judicially determined on July 16, 1993, and that the issue was res judicata as of that date. Appellee argued that the supposed in-kind payments made by appellants were alleged to have taken place prior to July 16, 1993, and the fact that those payments were made should have been raised as a defense in the prior foreclosure action. Appellee concluded that it should be granted the relief requested in its complaint and that appellants' quiet title action should be dismissed.

{¶ 19} On May 17, 2001, appellants filed their response to appellee's motion. Without ever addressing the res judicata argument, they again argued that the loan in question should have been satisfied by the cars and accounts receivable

which allegedly were delivered to Dollar Savings. Appellants included as attachments a number of certificate of title records from 1992 and early 1993, as well as an accounts receivable printout from Dollar Savings dated May 29, 1992. Not once did appellants explain how these documents overcame appellee's motion for summary judgment.

{¶ 20} On June 7, 2001, the trial court sustained appellee's motion for summary judgment and dismissed appellants' complaint. It is from this judgment entry that appellants have filed an appeal. Although appellants did not file their notice of appeal until July 10, 2001, the record indicates that they were not sent a copy of the June 7, 2001, judgment until June 11, 2001, which was four days after the judgment was filed. Pursuant to App.R. 4(A), if service of the judgment is not made within three days, it is the date of service which triggers the thirty-day appeal period. Appellants filed their appeal within thirty days of June 11, 2001. Thus, their appeal is timely.

{¶ 21} Appellants' sole assignment of error asserts:

{¶ 22} "The trial court did not apply the standards required by O.R.C.P. 56(C) in determining defendant's motion for summary judgment."

{¶ 23} Appellants argue that Civ.R. 56(C) requires a party moving for summary judgment to identify those parts of the record that show that no genuine issue of material facts exists for trial, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Appellants argue that the opposing party then has a reciprocal burden to raise specific facts showing that there is a material fact in dispute. Id.

{¶ 24} Appellants maintain that the documents they submitted show that there is a question as to whether they paid the loan in question by transferring cars and accounts receivable to Dollar Savings. Appellants argue that the car titles show that Dollar Savings was the titled owner of some cars formerly belonging to Used Car Corner. Appellants contend that Toxanna Simms' affidavit shows that Dollar Savings took over the account receivable of at least one of Used Car Corner's customers. Appellants also maintain that the other documents filed with the court show that Dollar Savings sold at auction a number of cars taken from Used Car Corner.

{¶ 25} Appellee argues that appellants' evidence fails to show any connection between the alleged transfers of car titles or receivables and the payment of the specific debt owed by appellants to Dollar Savings. Additionally, appellee asserts that none of the alleged transfers took place after the July 16, 1993 judgment, which found that appellants owed $128,261.46 on the line of credit. Appellee argues that appellants should have presented these facts in the prior action, and that the outstanding balance of the loan was res judicata as of July 16, 1993.

Based on the record before us, we are forced to say that appellee's arguments are persuasive.

{¶ 26} An appellate court reviews de novo a decision granting a motion for summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Before summary judgment can be granted the court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably toward the party against whom the motion for summary judgment is made, that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. "[T]he moving party bears the initial responsibility for informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264.

{¶ 27} Appellee argues that the doctrine of res judicata resolves this case. A determination as to whether the doctrine of res judicata applies is a matter of law which an appellate court reviews de novo. *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 586, 676 N.E.2d 946. This doctrine signifies that, " '[an existing] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue * * * and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.' " *Painter v. Graley* (1995), 106 Ohio App.3d 770, 773, 667 N.E.2d 78, quoting *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus. The doctrine of res judicata provides that an existing judgment or decree between the parties is conclusive as to all claims that were or *might have been litigated* in a first lawsuit. *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178.

{¶ 28} The doctrine has two prongs: (1) claim preclusion (previously called "estoppel by judgment"), and (2) issue preclusion (previously called "collateral estoppel"). *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. The claim preclusion concept holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Id. at syllabus.

{¶ 29} "The doctrine of res judicata also embraces the policy that a party must make good his cause of action or establish his defenses '* * * by all the proper means within his control, and if he fails in that respect, purposely or negligently, he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties.'" *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees* (1982), 69 Ohio St.2d 241, 244, 23 O.O.3d 243, 431 N.E.2d 672, quoting *Covington & Cincinnati Bridge Co. v. Sargent* (1875), 27 Ohio St. 233, 1875 WL 161, paragraph one of the syllabus.

{¶ 30} Issue preclusion prevents further action on an identical issue that has actually been litigated and determined by a valid and final judgment as part of a prior action among the same parties and those in privity with those parties. *State v. Williams* (1996), 76 Ohio St.3d 290, 294, 667 N.E.2d 932; *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 74, 6 O.O.3d 274, 369 N.E.2d 776.

{¶ 31} The parties do not dispute that appellee is in privity with Dollar Savings, which was one of the original parties in the 1993 foreclosure action.

{¶ 32} It is evident that an essential element of both claim preclusion and issue preclusion is that there be a valid prior final judgment. Appellant has raised a question as to whether there has been a final judgment with regard to the amount owed on the line of credit. The record reflects that the July 16, 1993, judgment entry made a *finding* that Dollar Bank was owed $128,261.46 plus interest. The significance of a trial court's finding of an amount due in a foreclosure action was clearly stated in the aged but still applicable case of *Doyle v. West* (1899), 60 Ohio St. 438, 54 N.E. 469:

{¶ 33} "The finding of the amount due is a necessary predicate to an order of sale *in a foreclosure proceeding,* and the finding *is a judicial determination of the amount.* The defendant can take issue as to the amount claimed. Where issue is taken, it must be, and is, heard as a question of fact. If no issue is taken, the finding is made as on confession. *The policy of the law is against the relitigation of questions of law or fact once heard and determined between the same parties. A question of fact once so determined is binding on the same parties in all subsequent litigation.* It would be somewhat anomalous, if, after the amount due on a note secured by mortgage had been, on issue taken, heard and determined in a foreclosure suit, afterwards a suit might be brought on the notes, and the whole question again litigated. *We regard the finding of the amount due in a foreclosure proceeding as a judicial determination of the question; and where it, or any balance after applying* the proceeds of sale, remains due and unpaid, *a suit may be brought on the finding to recover the amount.*" (Emphasis added). Id. at 443–444, 54 N.E. 469.

{¶ 34}  Appellants' contention in this appeal is essentially that they had a defense to the July 16, 1993, foreclosure decision, namely, the defense that the lien was satisfied through in-kind payments of automobiles and accounts receivables.  The difficulty with this defense is that appellants were required to raise the defense as part of the 1993 proceedings, and the record does not reflect any evidence that it was successfully raised in 1993 or preserved as an issue in this appeal.  The time to bring defenses to a mortgage and any notes associated with the mortgage is when the validity of the mortgage is before the court, i.e., during the initial foreclosure proceedings.  *Bank One Dayton, N.A. v. Ellington* (1995), 105 Ohio App.3d 13, 16, 663 N.E.2d 660, citing *Carr v. Home Owners Loan Corp.* (1947), 148 Ohio St. 533, 36 O.O. 177, 76 N.E.2d 389.

{¶ 35}  We must presume that appellants presented any evidence they had of in-kind payments to the trial court in 1993, and that the trial court took into account any such evidence in making its determination of the value of appellee's lien.  Any evidence or defenses available to appellant in 1993 but which were not raised at that time are considered to be waived:  "[T]he doctrine of res judicata is applicable to defenses which, although not raised, could have been raised in the prior action.  Accordingly, if a defendant * * * previously neglected to assert the defense, he is precluded from raising it subsequently by virtue of the existence of the judgment rendered in the former action."  *Johnson's Island,* 69 Ohio St.2d 241, 23 O.O.3d 243, 431 N.E.2d 672.

{¶ 36}  The remaining question to be answered is whether the July 16, 1993, judgment was a final order which appellants could have appealed.  It is the law in Ohio that debtors must immediately appeal an order of foreclosure, rather than waiting until a subsequent order confirming a foreclosure sale.  *Third Natl. Bank of Circleville v. Speakman* (1985), 18 Ohio St.3d 119, 18 OBR 150, 480 N.E.2d 411;  *Oberlin Sav. Bank v. Fairchild* (1963), 175 Ohio St. 311, 25 O.O.2d 181, 194 N.E.2d 580;  *Queen City S. & L. Co. v. Foley* (1960), 170 Ohio St. 383, 11 O.O.2d 116, 165 N.E.2d 633;  *Ohio Dept. of Taxation v. Plickert* (1998), 128 Ohio App.3d 445, 446, 715 N.E.2d 239;  *Toledo Trust Co. v. Wolff* (Feb. 16, 1990), Erie App. No. E–89–13, 1990 WL 12726;  *Shumay v. Lake Chateau, Inc.* (Apr. 22, 1981), Medina App. Nos. 1013 and 1034, 1981 WL 3947.

{¶ 37}  Likewise, an order for foreclosure has been held to be a final judgment with respect to parties claiming to hold liens on the property:

{¶ 38}  "[A] lien holder who is a party to a mortgage foreclosure action not only should but must predicate appeal upon a judgment in favor of the mortgagee and determining the mortgage to be the first and best lien upon the subject premises.  Failing to do so, he cannot thereafter in an appeal from a subsequent judgment confirming such priority attack the correctness of the earlier judgment."  *Foley,* supra, 170 Ohio St. at 389–390, 11 O.O.2d 116, 165 N.E.2d 633.

{¶ 39} An order of foreclosure is an immediately appealable order similar to those orders or judgments which fix the rights and obligations of the parties, but leave for future determination the manner of execution of the judgment. See, e.g., *Lewis v. Hickok* (1948), 149 Ohio St. 253, 36 O.O. 568, 78 N.E.2d 569; *Miami Univ. v. State Emp. Relations Bd.* (1990), 66 Ohio App.3d 251, 255, 583 N.E.2d 1111.

{¶ 40} The record does not reveal any dispute about the validity of the July 16, 1993 judgment entry. Appellants' May 17, 2001 response to appellee's motion for summary judgment conceded that the Mahoning County Court of Common Pleas determined in 1993 that the amount of appellee's lien was $128,261.46. Appellant raised some questions at oral argument about the validity of the confirmation of sale and deficiency judgment from December 1993. Although there does appear to be some question as to the terms of the December 1993 judgment and whether it was properly filed, those issues are irrelevant with respect to this appeal. The July 16, 1993 judgment entry presented appellants with a final and appealable order defining the amount of appellee's lien. If appellants had a viable defense with which to dispute the value of the lien, the defense should have been presented prior to July 16, 1993. If appellants believed that some error occurred in the proceedings leading up to the July 16, 1993 judgment, appellants should have appealed the decision to this court.

{¶ 41} The record reflects that all of appellants' evidence regarding in-kind payment of the lien involves transactions which occurred prior to the July 16, 1993 judgment. Even the affidavit of appellants' attorney, Clair Carlin, which was heavily relied upon at oral argument, alleges only that certain payments were made in 1992:

{¶ 42} "3. On June 8, 1992 and again on September 29, 1992, I met with representatives of the National City Bank during which meetings Mr. Italiano turned over in excess of $150,000 in automobiles and receivables in complete satisfaction of his outstanding balance. The bank represented that the receivables would be sufficient to pay any and all balance due and owing."

{¶ 43} Therefore, appellants' entire defense is based on evidence which should have been and could have been presented to the trial court in the 1993 action. Appellants are prohibited from raising this defense now based on the principles of claim preclusion analyzed above. The record contains no evidence of payments made subsequent to July 16, 1993, and therefore, it was appropriate for the trial court in the instant action to reaffirm appellee's lien in the amount of $128,261.46 and to award interest accruing from March 30, 1993.

{¶ 44} It was also appropriate for the trial court to grant summary judgment to appellee in the quiet title action, because the entire basis of the action depended on appellants' proof that the underlying debt had been paid. As

already established, as of July 16, 1993, the debt had not been paid. Although appellants could have presented evidence of payments made after July 16, 1993, the record contains no such evidence. Therefore, there does not appear to be any fact in evidence disputing that appellee's mortgage lien is based on an underlying debt and that the debt has not been satisfied.

{¶ 45} For all the foregoing reasons, we overrule appellants' sole assignment of error and affirm the judgment of the trial court granting summary judgment to appellee on count one of its counterclaim, and dismissing appellants' quiet title action.

Judgment affirmed.

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.