**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellant,**

**v.**

**DAY et al.: Huntington National Bank, Appellee.**

[Cite as *Fed. Natl. Mtge. Assn. v. Day*, 158 Ohio App.3d 349, 2004-Ohio-4514.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20186.

Decided Aug. 27, 2004.

350

John A. Polinko, for appellant.

Stephen A. Santangelo and Terrence R. Heffernan, for appellee.

FREDERICK N. YOUNG, Judge.

{¶ 1} In this case, Federal National Mortgage Association ("Federal") appeals from an order sustaining objections to Federal's proposed judgment entry confirming the sale of property and ordering distribution of proceeds from the sale. The objections were filed by Huntington National Bank ("Huntington"), which, like Federal, held a lien on the foreclosed property.

{¶ 2} In support of its appeal, Federal raises a single assignment of error, i.e., that the trial court erred in sustaining Huntington's objections to the proposed confirmation entry. After considering the matter, we reluctantly find that the assignment of error has merit. Accordingly, this matter will be reversed and remanded for further proceedings.

I

{¶ 3} The present appeal arises from a foreclosure action that Federal filed on June 18, 2002. The original defendants were the mortgagors (Jackie Day and Joy Day, a.k.a. Mooney), Huntington, Star Bank, Huntington Mortgage Company, and the Montgomery County Treasurer. Federal alleged in the complaint that it possessed a valid and first lien on the property that was the subject of the mortgage and that other defendants might have an interest in the premises. Federal also attached copies of the promissory note signed by Day and Mooney and an open-ended mortgage filed with the Montgomery County Recorder on October 19, 1995, and re-recorded on August 1, 1996. The amount of the unpaid debt on the mortgage exceeded $49,000, plus interest.

{¶ 4} Huntington filed an answer, stating that it held a mortgage executed by Day and Mooney that had been unpaid since July 2, 2002, in the amount of $9,635.20. Huntington indicated that it could not then obtain a copy of either its mortgage or its promissory note. However, Huntington did state that it had a good and valid mortgage lien that was recorded. Neither the recordation date nor the lien priority was mentioned in the answer.

{¶ 5} After Huntington filed its answer, Federal filed an amended complaint, for the purpose of changing the amount of interest alleged to be due (the original date listed was December 2001, but December 2000 was the correct date). Federal again attached copies of its promissory note and recorded mortgage. On October 22, 2002, Huntington filed an answer to the amended complaint, stating once more that copies of its promissory note and mortgage could not be obtained.

{¶ 6} On February 18, 2003, the trial court filed a judgment entry in rem, awarding default judgment against Day, Mooney, Huntington Mortgage, and Star Bank, all of whom had been served but had not answered. The court also

ordered foreclosure, awarded judgment to Federal in the amount requested in the amended complaint, and found that Huntington held an interest in the property that was junior to Federal's interest. This judgment entry was signed by the attorney for Federal and the trial court. The signature lines for the attorneys for the county treasurer and Huntington indicated that the judgment entry had been submitted to them.

{¶ 7} After the foreclosure judgment was filed, the property was appraised at $21,000 and was sold for $18,000 to Federal at a sheriff's sale held on June 27, 2003. However, on August 8, 2003, Huntington filed objections to Federal's proposed judgment entry confirming the sale and ordering distribution. In the objections, Huntington claimed that it held the first lien position on the property, because it had recorded its mortgage on October 6, 1994. This was almost one year before Federal's mortgage was recorded.

{¶ 8} Huntington did not file any affidavits supporting its objections. In the memorandum, Huntington did say that Federal's counsel had acknowledged during discussions of the matter that Huntington's mortgage had been filed first. Further, Huntington claimed that its own failure to notice the priority issue in the foreclosure judgment entry was due to a "clerical oversight."

{¶ 9} Subsequently, on August 15, 2003, Huntington filed a "notice" incorporating the pertinent promissory note and mortgage into its previously filed answer. On the same day, the trial court filed an entry indicating that Huntington's objections would be submitted for decision as of September 10, 2003. The court also set deadlines for memoranda in opposition and replies. However, before the deadline had expired, a judgment entry was filed on August 18, 2003, confirming the sale and ordering distribution. In this regard, the entry noted that the property had been sold for $18,000 to Federal. The entry further ordered that Federal, as holder of the first and best lien, was not required to deposit any part of its bid amount, except for court costs, sheriff's fees, and real estate taxes. After deduction for these amounts, the court ordered $17,096.64 to be paid to Federal. In addition, all existing liens on the property were canceled.

{¶ 10} As with the previous foreclosure judgment, this order was signed only by Federal's attorney and the trial judge. The signature line for the county treasurer indicated that the entry had been submitted, reviewed, and approved per written authority. The signature line for Huntington's attorney stated: "Mailed copy for review. No reply."

{¶ 11} Ultimately, on September 26, 2003, the trial court filed an entry and order sustaining Huntington's objections to what the court called the "proposed" judgment entry confirming sale and ordering distribution. The court found that Huntington's mortgage had preference because it was recorded first and Huntington had not waived its priority. However, the court did not address the fact

that it had previously filed an entry confirming distribution. Federal then filed a notice of appeal from this order on October 23, 2003.

{¶ 12} In claiming that the trial court erred in sustaining the objections, Federal makes two main arguments. The first is that Huntington is estopped from denying subordination of its mortgage because Huntington failed to assert the priority of its mortgage and, in fact, approved the foreclosure judgment that gave Federal's lien the first priority position. Federal's second argument is that Huntington improperly attempted to collaterally attack the foreclosure judgment rather than filing a Civ. R. 60(B) motion to set aside the judgment.

{¶ 13} We agree with Federal's second argument. Because this argument disposes of the appeal, we will not address the issue of estoppel.

{¶ 14} The trial court judgment of February 18, 2003, which (1) awarded foreclosure, (2) found the amount due to Federal, and (3) found Huntington Bank's lien junior in priority, was a final, appealable order. *Third Natl. Bank of Circleville v. Speakman* (1985), 18 Ohio St.3d 119, 18 OBR 150, 480 N.E.2d 411, citing *Oberlin Sav. Bank v. Fairchild* (1963), 175 Ohio St. 311, 25 O.O.2d 181, 194 N.E.2d 580. See, also, *Italiano v. Commercial Financial Corp.*, 148 Ohio App.3d 261, 2002-Ohio-3040, 772 N.E.2d 1215, at ¶ 37–39 (lienholder who fails to immediately appeal foreclosure order cannot subsequently attack correctness of foreclosure judgment in appeal of confirmation order).

{¶ 15} If Huntington wanted to challenge the foreclosure order, it could have appealed from the order within the appropriate appeal time. If Huntington discovered a mistake that was not evident from the record, it could also have filed a Civ.R. 60(B) motion, asking for relief from the judgment. Unfortunately, Huntington did not follow either course. Instead, Huntington filed objections to the proposed confirmation order. That was not appropriate, since the proper time to challenge the existence and extent of mortgage liens is in the foreclosure action. See *Bank One Dayton, N.A. v. Ellington* (1995), 105 Ohio App.3d 13, 16, 663 N.E.2d 660.

{¶ 16} For example, in *Bank One*, we held that issues about defects in a mortgage deed should be raised in the foreclosure part of an action, not when the court faces confirmation of a judicial sale. In this regard, we noted that confirmation involves only decisions on whether a sale has been conducted in accordance with R.C. 2329.01 through R.C. 2329.61. This includes issues like whether the public-notice requirements in R.C. 2329.26 were followed and whether the sale price was at least two-thirds of the land's appraised value, as required by R.C. 2320.20. *Ohio Sav. Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 55, 563 N.E.2d 1388.

{¶ 17} Huntington has not specifically responded to the contention that it should have filed a Civ.R. 60(B) motion. However, Huntington does cite *Dairymen's Coop. Sales Co., Inc. v. Frederick Dairy* (App.1934), 17 Ohio Law Abs. 690, 1934 WL 2577, for the proposition that trial courts have the inherent ability in equitable proceedings to modify their orders affecting a sale of property.

{¶ 18} In *Dairymen's Coop.*, the assets, including real property, of a corporation were placed into receivership and the trial court subsequently authorized a sale of the assets. An unsecured creditor appealed from the order of sale, claiming that the trial court had accepted an inadequate bid. While reviewing the records, the Seventh District Court of Appeals discovered that the trial court had approved the bid and had authorized the conveyance of the property after the appeal was pending. The court thus considered the potential effect of setting the sale aside. In this regard, the Seventh District noted that setting the sale aside at that point could cause chaos. When discussing this issue, the Seventh District also remarked:

{¶ 19} " 'A trial judge in equity proceedings exercising authority over a sale of property in the control of the court, has discretionary power to modify his orders affecting such sale by subsequent orders. The chancellor or judge administering equity will protect the rights of all interested and make the sale most profitable to all, and after a sale has once been made, he will certainly before the confirmation, see that no wrong has been accomplished in and by the manner in which the sale was conducted.' " Id. at 692, quoting Clark on Receivers, 701, Section 518.

{¶ 20} According to Huntington, the trial court in the present case had the right, under this authority, to modify the orders to make sure that no wrong was accomplished. We disagree.

{¶ 21} When *Dairymen's Coop.* was decided, the Ohio Rules of Civil Procedure were not yet in effect. Before the Civil Rules were adopted, trial courts had "inherent power to vacate their own judgments." *Society Natl. Bank v. Repasky* (Sept. 21, 2000), Mahoning App. No. 99 CA 193, 2000 WL 1486767, * 3, citing *McCue v. Buckeye Union Ins. Co.* (1979), 61 Ohio App.2d 101, 15 O.O.3d 103, 399 N.E.2d 127. However, after "adoption of the Civil Rules, Civ. R. 60(B) provides the exclusive means for a trial court to vacate a final judgment." Id., citing *Rice v. Bethel Assoc.* (1987), 35 Ohio App.3d 133, 134, 520 N.E.2d 26. Accord, *Hellmuth, Obata & Kassabaum v. Ratner* (1984), 21 Ohio App.3d 104, 107, 21 OBR 112, 487 N.E.2d 329.

{¶ 22} In *Repasky,* the trial court entered a foreclosure decree in November 1997, and the property was sold in May 1998. 2000 WL 1486767, at * 1. The confirmation entry was filed in June 1998, but the trial court later amended the foreclosure order sua sponte to include a mortgagee's unasseted interest. Id. at

** 1–2. On appeal, the Seventh District Court of Appeals held that the trial court had improperly modified a final order. In this regard, the Seventh District first noted that Civ.R. 60(B) provides the exclusive means of vacating a prior order. The Seventh District then stated:

{¶ 23} "Clearly, the trial court's November 6, 1997 entry [the foreclosure order] stating that each defendant was in default and barred from asserting an interest in the property was a final order. None of the parties filed a Civ. R. 60 motion nor was the trial court permitted under the rules to *sua sponte* modify the substance of that order." Id. at * 3.

▆▆ {¶ 24} Trial courts do have the ability, under Civ.R. 60(A), to modify their orders to correct clerical mistakes. In this regard, Rule 60(A) provides:

{¶ 25} "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders."

▆▆ {¶ 26} However, while this rule allows "a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, * * * [it] does not authorize a trial court to make substantive changes in judgments. The term 'clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." (Citation omitted.) *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 100, 671 N.E.2d 236. See, also, *Bobb Forest Products, Inc. v. Morbark Industries, Inc.,* 151 Ohio App.3d 63, 2002-Ohio-5370, 783 N.E.2d 560, at ¶ 28–33.

{¶ 27} In the present case, the foreclosure judgment stated that Federal's lien was first in priority and that Huntington's lien was junior. Any mistake regarding these facts is not apparent on the face of the record and is not mechanical in nature. The proper procedure would have been for Huntington to file a motion under Civ.R. 60(B), asking for relief from the foreclosure judgment. Instead, Huntington filed objections to a later entry that confirmed the sale and ordered distribution of the sale proceeds.

{¶ 28} At the time the trial court sustained the objections, the entry confirming the sale had already been filed and was also a final order. However, the court did not indicate that the confirmation order was being modified pursuant to Civ.R. 60(A). In fact, the court did not even seem aware that the confirmation entry had already been filed.

{¶ 29} Nonetheless, even if the trial court had tried to use Civ.R. 60(A), its effort would have been ineffective because the issue of lien priority had previously been settled in the foreclosure order. When the trial court sustained the

objections to the confirmation entry, it improperly attempted to alter the effect of the previous foreclosure judgment, which should have been appealed or been the subject of a Civ.R. 60(B) motion. Because the trial court erred in sustaining the objections to the confirmation entry, Federal's assignment of error has merit. We should note that we are troubled by this outcome. In particular, we are disturbed by the fact that Federal submitted and filed the confirmation entry at a time when objections to the proposed confirmation entry were pending. While this could not have affected the foreclosure judgment and the findings about lien priority, which were already final, Federal's conduct is troubling, or at least the conduct portrayed in the record is troubling. Unfortunately, we have no ability to address this matter, since Huntington failed to follow appropriate procedures for obtaining relief from judgment.

{¶ 30} Based on the preceding discussion, the single assignment of error is sustained. Accordingly, the trial court judgment is reversed, and this matter is remanded for further proceedings.

Judgment reversed
and cause remanded.

BROGAN and GRADY, JJ., concur.