[Cite as *Fifth Third Bank v. Dayton Lodge Ltd. Liab. Co.*, 2012-Ohio-3387.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| FIFTH THIRD BANK | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24843 |
| v. | : | T.C. NO. 07CV2432 |
| DAYTON LODGE LIMITED LIABILITY COMPANY, et al. | : | (Civil appeal from Common Pleas Court) |
| Defendants-Appellees | : | |
| and | | |
| SALAM SAID SHAJA | : | |
| Defendant-Appellant | | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ⎯⎯ 27th ⎯⎯ day of ⎯⎯ July ⎯⎯, 2012.

. . . . . . . . . .

LAWRENCE T. BURICK, Atty. Reg. No. 0010404 and CHRISTINE M. COOPER, Atty. Reg. No. 0079160, Austin Landing I, 10050 Innovation Drive, Suite 400, Dayton, Ohio 45342
        Attorneys for Plaintiff-Appellee

JOSEPH C. LUCAS, Atty. Reg. No. 0081336 and KELLY A. BENNINGTON, Atty. Reg. No. 0082277, 7015 Corporate Way, Suite 200, Centerville, Ohio 45459
        Attorneys for Defendant-Appellant Salam Said Shaja

. . . . . . . . . .

CUNNINGHAM, J. (by assignment)

**{¶ 1}**  Salam Said Shaja, the purchaser of the foreclosed property in a foreclosure action, appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his motion to set aside the sheriff's sale.  The trial court construed Shaja's motion as a Civ.R. 60(B) motion for relief from judgment.

**{¶ 2}**    For the following reasons, the trial court's judgment will be affirmed.

### I.   Factual and Procedural History

**{¶ 3}**  Dayton Lodge Limited Liability Company operated the Dayton Executive Hotel, located at 2401 Needmore Road in Dayton.  At various times, Dayton Lodge obtained commercial loans from Fifth Third Bank, totaling approximately $3.75 million.   The notes were secured by mortgages on the hotel property, including assignments of rents and leases.   Jamal Garmo, a member of Dayton Lodge, signed a guaranty agreement regarding a 2003 commercial loan in the amount of approximately $3.25 million.   Dayton Lodge had also signed a third party collateral agreement and mortgage to secure a commercial loan to a third party in the amount of $975,000.

**{¶ 4}**    In March 2007, Fifth Third Bank filed a foreclosure complaint against Dayton Lodge, Jamal Garmo, and others, alleging that it was the holder of the 2003 note, that the note was secured by a mortgage, and that Dayton Lodge had defaulted on the note and mortgage.  Fifth Third Bank stated that Dayton Lodge owed $2,817,616, including the outstanding principal, accrued interest, late charges and other charges.  Fifth Third sought judgment on the note and requested that the mortgage be foreclosed and that the property be

sold. Fifth Third also asked for possession of Dayton Lodge's collateral, for payment by Garmo in accordance with his guaranty, and for attorney fees and court costs.

{¶ 5} Contemporaneous with the filing of its complaint, Fifth Third filed a motion for the appointment of a receiver "to take exclusive and complete possession, custody and control" of the property and to operate the hotel business. On April 11, 2007, the court issued an agreed order appointing a receiver. However, the receivership did not become effective until February 8, 2008, when the receiver filed his "Receiver's Oath and Notice of Filing Bond."

{¶ 6} On April 2, 2008, the trial court issued a final judgment and decree of foreclosure in favor of Fifth Third. The judgment included a monetary judgment against Dayton Lodge on the 2003 note, a monetary judgment against Garmo on the guaranty, and an order foreclosing the equity of redemption and ordering the sale of the property, if the amounts due to the bank and costs were not paid by a certain date. An auction was attempted in April 2008 with an auctioneer who advertised nationally. Although there were several spectators, there were no bidders, and the auction was cancelled. Upon motion by Fifth Third, the court then authorized the appointment of Bambeck Auctioneers, Inc. to conduct a public auction of the property.

{¶ 7} The receiver filed interim reports for the property for the months of February, March, April, and May 2008. The interim report for April indicated that the "hotel was closed on April 29, 2008. The hotel was secured and Buckeye Glass & Block boarded up the windows on the first floor. The shuttle vans were towed to storage and all rooms were inspected and inventoried."

{¶ 8} On August 7, 2008, Shaja purchased the property at the public auction for $1,150,000 and paid the required deposit of $115,000. Dayton Lodge objected to the sale, arguing that the appraisers of the property were not qualified and that the receiver had allowed the property to deteriorate, which depressed the sale price of the property.[1] One month later, Fifth Third moved for confirmation of the sale.

{¶ 9} In February 2009, prior to any ruling on Dayton Lodge's objections to the sale and Fifth Third's motion to confirm the sale, the trial court "conditionally dismissed" the case, "without prejudice until such time as a final dismissal entry with prejudice is filed," based on a report that the parties had settled the case. Several months later, the receiver moved to close the receivership; that motion was opposed by Dayton Lodge due to pending criminal charges against Dayton Lodge's controller based on the receiver's alleged failure to maintain the fire suppression system at the hotel.

{¶ 10} In November 2009, Fifth Third informed the court that Dayton Lodge and the bank had entered into an agreed order to confirm the sale, and the bank moved for the court to enter that order. Dayton Lodge opposed the motion arguing, in part, that the purchaser of the property (Shaja) would not accept the property until fire code issues had been resolved. Ultimately, on February 4, 2011, the trial court confirmed the sale of the property.

---

[1] Dayton Lodge had previously objected to the appraisers' valuation. In separate filings, Dayton Lodge provided affidavits from commercial realtor Terry Baltes, who indicated that he believed the property value to be at least $2,500,000, and from William A. Fehse, controller for Dayton Lodge, who provided a November 2007 appraisal by Fifth Third Bank with a value of $2,100,000.

{¶ 11} Shaja subsequently moved for an order to set aside the sheriff's sale. Shaja argued that the property had "lost much of its value as a result of the inaction of Plaintiff Fifth Third Bank * * * and its receiver, William D. Hoffman * * * during a 30 month delay in filing the confirmation entry." Shaja argued that the receiver had failed to rectify problems with the ceiling and leaking water and standing water in the basement, which led to black mold issues and continued deterioration of the property. Shaja further argued that, because the hotel had not been operated as a hotel for more than two years and because of the amount of damage to the property, the Harrison Township Zoning Code would no longer allow the property to be used as a hotel as a "nonconforming use." Shaja claimed that he did not have standing in the action until the confirmation of sale, and that, in the interest of "equity and justice," he should be relieved from his obligation to buy the property. Shaja asked the court to vacate the confirmation of sale.

{¶ 12} Fifth Third opposed the motion, arguing that a motion to set aside the sheriff's sale was barred by res judicata. The bank further asserted that, even if the motion were construed as a Civ.R. 60(B) motion, it failed to satisfy any of the requirements for such a motion. In his reply memorandum, Shaja responded that he had a meritorious defense to the judgment due to the receiver's misconduct, that his motion was timely, and that the bank's willful conduct had caused damage to the property, which he could not have discovered earlier due to lack of access to the property. Shaja claimed that he was entitled to relief under Civ.R. 60(B)(2), (3), and (5).

{¶ 13} The trial court construed Shaja's motion as a motion for relief from judgment, pursuant to Civ.R. 60(B), and denied the motion without a hearing. The court

found that the motion was timely filed, and it made "a preliminary finding that there are operative facts as to the conduct of the Bank and Receiver, as contained in the Receiver's reports, that would give rise to a meritorious defense." The court noted that there was "an issue in this case whether the Bank/Receiver's conduct post-sale was deliberate and whether it devalued the property."

**{¶ 14}** The court further found, however, the Shaja had not demonstrated that he was entitled to relief under one of the grounds set forth in Civ.R. 60(B). The court reasoned:

> Purchaser must demonstrate he is entitled to relief under one of the grounds stated in Civ. R. 60(B[)]. Bank contends Purchaser has not alleged he was unaware of damage to the property until after confirmation, or that he was denied access to the premises such that relief from judgment could be warranted because of newly discovered evidence under Civ. R. 60(B)(2). Bank contends Purchaser has not alleged fraud or misconduct incident to obtaining the judgment sufficient to satisfy the requirement under Civ. R. 60(B)(3). Moreover, Bank contends Purchaser could have intervened to protect his interest in the property after the sale but before confirmation, and therefore he is not entitled to relief from judgment under Civ. R. 60(B)(5). By contrast, Purchaser argues that he was denied access to the premises following the sale, and that the Receiver's reports did not go into explicit detail regarding damage to the premises, and these facts warrant relief under Civ. R. 60(B)(2), (3) and (5).

As noted above, upon sale of the property, Purchaser had standing to appear and move to protect his interest in the property, or to move to intervene in the action. From the time of the sale on May 29, 2008 [sic], to the order of confirmation on February 4, 2011, the Purchaser did not move to intervene or appear to protect his interest in the property. Purchaser argues he was denied access to the premises, as demonstrated by the correspondence attached to his original motion. The attachments to the motion include a notice of violation to the Ohio Fire Code, concerning a damaged door, issued in the form of a letter from the Harrison Township Fire Department, Fire Prevention Bureau, to the attorney for the Bank, and a notice of property maintenance violation, concerning graffiti, issued by a Harrison Township Code Enforcement Officer in the form of a letter directed to the debtor. The Court finds these documents insufficient to support Purchaser's claim that he was denied access to the premises. Even if Purchaser was denied access to the premises, such does not excuse him for failing to appear and protect his interest in the property or to move to intervene in this action, the remedies suggested by the relevant authorities. Therefore, the Court finds that a denial of access to the premises, or insufficient detail in the Receiver's reports, did not absolve the Purchaser of his responsibility to assert his right to protect his interest in the property in this action, such that these allegations do not warrant relief under Civ. R. 60(B). The Court further finds that the Receiver's alleged misconduct was not made incident to obtaining the order

of confirmation, but is rather in the nature of misconduct upon which a claim could be based.

Nothing in this Rule 60(B) decision should be construed as either expanding or restricting Purchaser['s] rights, if any, as the rightful owner of the property, to seek legal redress against Bank and Receiver for their conduct subsequent to the sale, as the Purchaser's deed "relates back to and passes title as of the date of the sale." * * *

(Internal citations omitted.)

{¶ 15}  Shaja appeals from the trial court's denial of his motion to set aside the sale of the property.

## II.

{¶ 16}  Shaja's sole assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLANT WAS PRECLUDED FROM BRINGING A MOTION TO VACATE UNDER CIV.R. 60(B) BECAUSE APPELLANT DID NOT INTERVENE PRIOR TO THE CONFIRMATION OF THE SHERIFF'S SALE.

{¶ 17}  In his assignment of error, Shaja claims that the trial court abused its discretion when it found that he was precluded from seeking relief under Civ.R. 60(B), because he failed to protect his interest in the property prior to the confirmation of sale.

{¶ 18}  As an initial matter, we agree with the trial court that Shaja's motion was properly construed as a motion for relief from judgment, pursuant to Civ.R. 60(B).  A

foreclosure action is a two-step process, the first part of which ends with the judgment and decree of foreclosure, which is a final appealable order. *E.g.*, *Mid-State Trust IX v. Davis*, 2d Dist. Champaign No. 07-CA-31, 2008-Ohio-1985, ¶ 23. The second part of the process involves the sale of the property, culminating in a confirmation of sale and dispersal of the proceeds. *See id*. at ¶ 24-25. An order confirming the sale of the property is also a final appealable order. *Id*. at ¶ 26.

{¶ 19} At the time Shaja filed his motion to set aside the sheriff's sale, the trial court had entered a judgment and decree of foreclosure in favor of Fifth Third and an order confirming the sale of the property to Shaja. At that juncture, the order of confirmation could be challenged only by way of appeal or through a motion for relief from judgment, pursuant to Civ.R. 60(B). The trial court did not have jurisdiction to reconsider its decision to confirm the sale. *E.g.*, *Tucker v. Pope*, 2d Dist. Miami No. 2009 CA 30, 2010-Ohio-995, ¶ 25 ("The Ohio Rules of Civil Procedure do not provide for a motion for reconsideration of a final order. Therefore, any order that a trial court enters on a motion for reconsideration is a legal nullity."); *Pitts v. Ohio Dept. Of Transp.*, 67 Ohio St.2d 378, 423 N.E.2d 1105 (1981).

{¶ 20} Civ.R. 60(B) permits trial courts to relieve parties from a final judgment for the following reasons: (1) "mistake, inadvertence, surprise or excusable neglect," (2) newly discovered evidence, (3) fraud, misrepresentation or other misconduct of an adverse party, (4) the judgment has been satisfied, released or discharged, or (5) any other reason justifying relief from the judgment. To prevail on a Civ.R. 60(B) motion, the movant must show that (1) he has a meritorious defense or claim to present if relief were granted; (2) he is entitled to

relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) his motion is timely. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. All three elements must be established, and "the test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994).

{¶ 21} We review the trial court's denial of Shaja's motion for an abuse of discretion. The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 22} Shaja argues that the trial court denied his motion to set aside the sheriff's sale without examining the requirements of Civ.R. 60(B)(1)-(5). He further claims that the trial court denied his motion based on its conclusion that the "failure to move or intervene pre-confirmation absolutely precludes intervention post-confirmation." Shaja interprets the trial court's decision to hold, based on "relevant authorities," that the failure to intervene "automatically precludes" relief under Civ.R. 60(B).

{¶ 23} We disagree with Shaja's reading of the trial court's decision. Although the trial court did not reference Civ.R. 60(B)(3), it specifically found that "the Receiver's alleged misconduct was not made incident to obtaining the order of confirmation, but is rather in the nature of misconduct upon which a claim could be based." The trial court also separately addressed the arguments raised by Shaja under Civ.R. 60(B)(2) and (B)(5), and concluded that, under the facts of this case, his failure to intervene and protect his rights precluded relief under Civ.R. 60(B). The trial court's reference to "relevant authorities"

was not for the proposition that a buyer is required to intervene prior to confirmation but, rather, that a buyer may move to intervene in the action prior to confirmation in order to protect his or her interest in the property. We, therefore, turn to the three grounds for relief raised by Shaja.

{¶ 24} Civ.R. 60(B)(2) permits relief from judgment when there is "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B)." It is unclear whether Civ.R. 60(B)(2) is applicable, given that the confirmation of sale was not issued after an evidentiary proceeding.

{¶ 25} Assuming that Civ.R. 60(B)(2) is applicable, Shaja has argued that he was not aware of the full extent of the damage to the premises until after the confirmation of sale, because his agents were not allowed onto the premises. Accepting, for sake of argument, that Shaja was denied access to the building and that the full extent of the damage was newly discovered, Shaja was still required to demonstrate that he could not have discovered the new evidence earlier through due diligence.

{¶ 26} Shaja was aware at the time of the auction that the hotel had been closed. The receiver's report prior to the auction specifically stated that the hotel ceased to operate on April 29, 2008. Through the exercise of due diligence, Shaja could have discovered the zoning requirements for the property, that the hotel was operating as a non-conforming use, and that certain conditions had to be met, such as the reopening of the hotel within a certain time period, in order to continue to operate the property as a hotel.

{¶ 27} As to the condition of the property, Shaja also did not establish that he could not have discovered the extent of the damage to the property through due diligence. Shaja

was provided an opportunity to view the property prior to the August 2008 auction. The receiver had filed an initial inspection report for the property in March 2008, which described the deteriorated condition of the building and parking lot prior to the auction. For example, the report stated:

> Many of the rooms are in poor condition. The entire southern wing is shut down as many rooms have damage to the ceiling and missing furniture. The second floor on the western wing is shut down due to leaks in the ceiling. The parking lot has deteriorated and several holes have developed in the areas where the drains are located.

Exhibit B to the initial inventory report provided a detailed summary of the property's poor condition at the time of the initial inspection. The parties filed several affidavits following the auction, which reiterated the deteriorated condition of the property at the time of the auction.

**{¶ 28}** . The receiver also filed several interim reports prior to the auction, which indicated anticipated repairs to the building and contained detailed financial statements showing the expenses incurred. Although the receiver did not file interim reports following the auction, the record reflects that Dayton Lodge opposed the sale of the property on the ground that the receiver had allowed waste of the property, and Dayton Lodge later objected to the closing of the receivership estate due to the receiver's alleged failure to maintain the fire suppression system, leading to criminal charges against Dayton Lodge's controller and, later, the receiver. The July 2009 settlement agreement between Fifth Third and Dayton Lodge references an insurance claim related to the basement.

{¶ 29}    The record does not reflect that full extent of the damage to the property, as described by Shaja in his motion to set aside the sheriff's sale, or the causes of the increased deterioration described by Shaja.   However, the record does reflect allegations of waste during the lengthy receivership, and there is nothing to demonstrate that Shaja took any action to investigate these claims and to protect his interest in the property during the two and a half year period between the auction and the trial court's confirmation of the sale.

{¶ 30}    It is undisputed that Shaja did not have a vested interest in the property until the sale was confirmed by the trial court.   *Ohio Sav. Bank v. Ambrose*, 56 Ohio St.3d 53, 563 N.E.2d 1388 (1990).   However, purchasers of foreclosed properties have "the right to intervene and participate to protect their interests incident to the sale" prior to confirmation by the trial court.   *Mid-American National Bank v. Heiges*, 6th Dist. Ottawa No. 94OT025, 1994 WL 645780 (Nov. 18, 1994); *see also Franklin Cty. Treasurer v. Kafele*, 10th Dist. Franklin No. 05AP-252, 2005-Ohio-6618, ¶ 8.   In this case, the trial court did not abuse its discretion in determining that Shaja sat on his rights and failed to exercise due diligence when he failed to intervene in the action prior to the confirmation of sale.

{¶ 31}    Civ.R. 60(B)(3) addresses fraud, misrepresentation or other misconduct by an adverse party.   "[T]he fraud or misconduct referred to in Civ.R. 60(B)(3) is fraud or misconduct relating to the obtaining of the judgment, rather than fraud or misconduct upon which a claim or defense is based."   *Fifth Third Bank of W. Ohio v. Thorn*, 2d Dist. Miami No. 93-CA-19, 1994 WL 53833, *4 (Feb. 23, 1994); *see also GMAC Mortgage, L.L.C. v. Herring*, 189 Ohio App.3d 200, 2010-Ohio-3650, 937 N.E.2d 1077, ¶ 31 (2d Dist.).

{¶ 32}    Shaja alleged in his motion that the receiver denied him access to the hotel

property and that the receiver and Fifth Third did not report on the full extent of the damages to the premises, all of which suggested misconduct by the bank and the receiver. However, Shaja does not claim that the parties fraudulently induced the purchase of the property at the time of the sale. And, the trial court's decision on whether to confirm the sale "involves only decisions on whether a sale has been conducted in accordance with R.C. 2329.01 through R.C. 2329.61. This includes issues such as whether the public-notice requirements in R.C. 2329.26 were followed and whether the sale price was at least two-thirds of the land's appraised value, as required by R.C. 2320.20." (Citations omitted.) *Federal National Mortgage Association v. Day*, 158 Ohio App.3d 349, 2004-Ohio-4514, 815 N.E.2d 730, ¶ 16. Shaja acknowledged in his reply memorandum to the trial court that the sheriff's sale was conducted according to law. While Shaja may have a claim against the original property owner, the bank, and/or the receiver for excessive damage to the property after the sale, such a claim does not fall within Civ.R. 60(B)(3).

{¶ 33} Civ.R. 60(B)(5) permits relief "for any other reason justifying relief from the judgment." The Ohio Supreme Court has held that "Civ.R. 60(B)(5) is intended as a 'catch-all' provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment, but it is not to be used as a substitute for any of the other more specific provisions of Civ.R. 60(B)." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the syllabus. Accordingly, Civ.R. 60(B)(5) is "only to be used in an extraordinary and unusual case when the interests of justice warrants it." *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 105, 316 N.E.2d 469 (8th Dist.1974).

{¶ 34} The trial court found that Civ.R. 60(B) relief was not warranted, because

Shaja failed "to appear and protect his interest in the property or to move to intervene in this action, the remedies suggested by the relevant authorities." As discussed above, the property was in poor condition at the time of the auction. For example, a report by Kevin Berry, Director of Hotel Operations for Trigild (the company hired by the receiver to manage Dayton Lodge's hotel), indicated numerous defects in the building in February 2008. They included, among other things, that the windows showed signs of moisture, water was visibly dripping from the ceiling outside numerous rooms (numerous rooms were blocked off due to the roof leaking and one entire corridor was ruined), the ceiling in seven guest rooms had fallen, the entire north wing was shut down due to damage to the ceiling and missing furniture, the second floor of the west wing was shut down due to leaks in the ceiling, water heaters were not working, numerous heating and air conditioning units were broken, plumbing pipes were broken, the security system did not work, and many electrical outlets were old and broken. (See Fifth Third's affidavits in support of its motion for confirmation of sale, 10/3/2008). The receiver's interim reports did not reflect that substantial repairs had been made, and the record reflects that there were allegations of waste. Given the lengthy delay between the August 2008 auction and the February 2011 confirmation of sale, the trial court did not abuse its discretion in determining that Shaja should have taken some action, prior to the confirmation of sale, to protect his interest in the property.

{¶ 35} The trial court did not abuse its discretion in concluding that Shaja failed to demonstrate his entitlement to relief under Civ.R. 60(B). The assignment of error is overruled.

III.

**{¶ 36}** The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

(Hon. Penelope R. Cunningham, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Lawrence T. Burick
Christine M. Cooper
Joseph C. Lucas
Kelly A. Bennington
Mark J. Sheriff
Thomas M. Green
Jared A. Wagner
Donald W. Jordan
Joseph G. Strines
George B. Patricoff
Lucas C. Ward
Hon. Gregory F. Singer