O'NESTI et al., Appellees,

v.

DeBARTOLO REALTY CORPORATION et al., Appellants.

[Cite as *O'Nesti v. DeBartolo Realty Corp.,* 163 Ohio App.3d 609, 2005-Ohio-5056.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 170.

Decided Sept. 21, 2005.

610

Timothy A. Shimko & Associates and Timothy A. Shimko, for appellees.

Manchester, Bennett, Powers & Ullman and Stephen T. Bolton; Squire, Sanders & Dempsey, L.L.P., Thomas S. Kilbane, and Steve A. Delchin, for appellants.

VUKOVICH, Judge.

{¶ 1} Defendants-appellants, DeBartolo Realty Corporation ("DRC") and De-Bartolo Properties Management, Inc. ("DPMI"), appeal the decision of the Mahoning County Common Pleas Court, which denied their motion for summary judgment and granted the motion for summary judgment filed by plaintiffs-appellees, Gary O'Nesti and Leon Zionts. Appellants set forth multiple issues on appeal within seven assignments of error. For the following reasons, appellants' contentions are barred by res judicata or are otherwise without merit. The trial court's judgment for appellees is affirmed.

## BACKGROUND

{¶ 2} In 1994, DRC implemented a Stock Incentive Plan for select employees. Deferred stock was allocated in varying amounts to various employees to be earned upon reaching certain goals. On August 6, 1996, DRC merged with a subsidiary of Simon Property Group, Inc., creating SD Property Group, Inc. Various employees ("the *Agostinelli* employees") immediately asked that all deferred stock originally allocated to them under the Stock Incentive Plan be distributed under the "Change in Control" provision of the Stock Incentive Plan. Appellees herein were not among the *Agostinelli* employees.

{¶ 3} In October 1996, the *Agostinelli* employees filed a complaint in the Mahoning County Common Pleas Court against DRC and DPMI for breach of contract and breach of the covenant of good faith and fair dealing. The defendants argued that upon the change in control, the employees were entitled only to the deferred stock that was earned but not yet vested. The trial court agreed, but this court reversed and entered summary judgment for the employees.

{¶ 4} We held that the plain language of the contract stated that upon a change in control, such as the August 6, 1996 merger, any unpaid Deferred Stock Award, meaning the shares originally allocated to each employee, vested and became payable regardless of whether they had been earned. *Agostinelli v. DeBartolo Realty Corp.* (Aug. 18, 1999), 7th Dist. No. 97CA227, 1999 WL 669518. We then remanded for determination of the defendants' counterclaims and determination of any damages. Id.

{¶ 5} On remand, the trial court disagreed with the defendants' main counterclaim and agreed with a set-off counterclaim regarding two employees. The trial court then determined damages as $16.575 per share multiplied by the number of shares originally allocated to each employee, plus ten percent prejudgment interest since August 6, 1996. Upon the employees' appeal, we agreed with this damage calculation but remanded for trial on the issue of whether premerger dividends were payable. *Agostinelli v. DeBartolo Realty Corp.* (Dec. 19, 2001), 7th Dist. Nos. 01CA9, 01CA10, 2001 WL 1647218. We also remanded the matter to the trial court for a determination as to the number of shares allocated to one certain employee, as the shares allocated to the remaining employees had been established by admission. We also denied the defendants' cross-appeal.

## STATEMENT OF THE CASE

{¶ 6} Appellees were participants in the 1994 Stock Incentive Plan. They state that they were originally allocated 9,000 shares; they earned and later received 900 of these shares. Upon preparing for the merger, DRC sent letter agree-

ments to the appellees, dated June 1, 1996, which detailed their terms of employment if they stayed after the merger. Both stayed through the August 6, 1996 merger. Appellee O'Nesti later resigned in January 1997, and appellee Zionts resigned in September 1998.

{¶ 7} On February 15, 2003, appellees demanded 8,100 shares that were allocated to them but never earned or paid. On April 10, 2003, they filed a complaint against DRC and DPMI. The complaint cited the *Agostinelli* cases and alleged that the facts, claims, and issues were identical, and thus they were entitled to judgment as a matter of law due to res judicata and collateral estoppel. They concluded that at the August 6, 1996 merger, the change-in-control clause activated, entitling them to their remaining allocated and unpaid shares. In an amended complaint, they attached the documents upon which they were basing their allegation of breach of contract: the Stock Incentive Plan with its accompanying guidelines and a letter DRC sent to the participants to inform them of their original allocation.

{¶ 8} Appellants raised various defenses in their answer, which will be discussed. In January 2004, appellees filed a motion for summary judgment on the grounds of res judicata, collateral estoppel, and stare decisis, all based upon the prior *Agostinelli* suits. Appellees asked for $16.575 per share plus ten percent prejudgment interest since August 6, 1996, as we approved in *Agostinelli*; they did not seek pre-merger dividends as originally requested in their complaint.

{¶ 9} In April 2004, appellants responded and filed a cross-motion for summary judgment on the grounds of novation, modification, a lack of a Deferred Stock Award creating outstanding shares, statute of limitations, waiver and estoppel, and laches, and an alternative argument concerning the amount of prejudgment interest available. On July 1, 2004, the trial court granted summary judgment in favor of appellees and denied appellants' summary judgment motion. On July 20, 2004, the trial court filed a nunc pro tunc entry (to add the word "no" before "genuine issues of material fact"). Appellants filed a timely notice of appeal.

## ASSIGNMENT OF ERROR NO. ONE

{¶ 10} Appellants set forth seven assignments of error, the first of which provides:

{¶ 11} "The trial court erred in granting plaintiff's motion for summary judgment based upon the inapplicable doctrines of res judicata, collateral estoppel, and stare decisis."

{¶ 12} The doctrine of res judicata consists of two related concepts: claim preclusion (formerly called res judicata) and issue preclusion (formerly called collateral estoppel). *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653

N.E.2d 226. The doctrine of claim preclusion provides that a valid, final judgment rendered upon the merits bars all subsequent actions between the parties or their privies based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action. *Ft. Frye Teachers Assn. v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140. Thus, claim preclusion generally disallows relitigation of a cause of action that was or could have been litigated in the prior action. *Grava v. Parkman Twp.* at 382, 653 N.E.2d 226 (defining transaction as common nucleus of operative facts).

{¶ 13} The doctrine has also been applied to defenses. Thus, courts have held that a defendant should raise all applicable defenses in an initial action in order to avoid the bar in a subsequent action. *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees* (1982), 69 Ohio St.2d 241, 244–246, 23 O.O.3d 243, 431 N.E.2d 672 (holding that the doctrine of res judicata is applicable to defenses that could have been raised in a prior action). See, also, *Italiano v. Commercial Fin. Corp.,* 148 Ohio App.3d 261, 2002-Ohio-3040, 772 N.E.2d 1215, at ¶ 29, 34, 35.

{¶ 14} According to the doctrine of issue preclusion, a fact or a point that was actually and necessarily litigated and was determined by a court of competent jurisdiction may not be relitigated in a subsequent action between the same parties or their privies, even where the cause of action is different from the one in the prior suit. *Ft. Frye,* 81 Ohio St.3d at 395, 692 N.E.2d 140.

{¶ 15} Both doctrines contain the element of mutuality of parties. This previously meant that claim preclusion and issue preclusion could only be used where both parties would be mutually estopped by the judgment. The doctrine of mutuality extends not only to identical parties but also those in privity with a prior party. Privity was the start of the relaxation of the mutuality rule. Many courts around the country have since eliminated the mutuality requirement entirely, allowing a stranger to use the doctrine to bar a prior party in many circumstances. See *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 196, 2 OBR 732, 443 N.E.2d 978.

{¶ 16} Rather than totally abolish the requirement of mutuality, Ohio has greatly broadened its definition of privity. *Kirkhart v. Keiper,* 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8. See, also, *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 6 O.O.3d 274, 369 N.E.2d 776. Ohio requirements are not so strict as to require a contractual, beneficiary, or successive relationship. *Brown v. Dayton* (2000), 89 Ohio St.3d 245, 248, 730 N.E.2d 958.

{¶ 17} In fact, mere "mutuality of interest," including an identity of a desired result, can create privity. Id. For instance, where the parties whose relationship was at issue all referred to themselves as resident-taxpayers and sought disallowance of an ordinance, the Supreme Court has found privity for purposes of the claim-preclusion aspect of res judicata. Id.

{¶ 18} Appellants claim that there is not a sufficient identity of interests between the *Agostinelli* plaintiffs and appellees herein. Appellees respond that they are in fact in privity with the *Agostinelli* plaintiffs and make various comparisons. They were all employees of the same company. They were all participants in the same Stock Incentive Plan with the same Change in Control clause at issue due to a merger. They all sought payment of their unearned deferred stock awards. The proof of liability and damage calculation is the same for all plaintiffs. The only difference is the amount allocated to each plaintiff. Even so, the amount allocated was not in dispute in *Agostinelli* (except as to one plaintiff who claimed that he had been allocated additional shares after the original allocation). And the amount allocated to appellees herein is also not disputed as being 9,000 with 900 paid so far. (Rather, appellants argue in Assignment of Error No. Two that this 9,000-share allocation was not an actual award.)

{¶ 19} Under the Ohio Supreme Court's most recent decisions and their broad definition of mutuality, we hold that appellees are in privity with the *Agostinelli* plaintiffs. There is indisputably some mutuality of interest. In fact, these appellees were asked by the *Agostinelli* plaintiffs to participate in their lawsuit. The desired results in the cases are identical. Although each plaintiff received separate allocations, they are not fighting among themselves for their allocations. All plaintiffs desire to have the Stock Incentive Plan interpreted so that they are paid all allocated but unearned shares as a result of the change in control that took place during the August 6, 1996 merger.

{¶ 20} Moreover, identity of result is only one of the potential ways to establish mutuality of interest. The plaintiffs were employees at the same company at the same time with rights under the same deferred stock plan with the same conditions for allocation, award, earning, and vesting of their stock. Company documents have all plaintiffs outlined on the same list of original allocations. Hence, we conclude that there is sufficient mutuality of interest between appellees herein and the *Agostinelli* plaintiffs.

{¶ 21} Next, appellants argue that even if we find sufficient mutuality, there are various issues herein that were not at issue in *Agostinelli*. Although issue preclusion requires that the issue be actually and necessarily litigated and decided in the prior action, claim preclusion applies even if the defendant in the prior action did not raise all possible defenses. As aforestated, a defendant is barred by claim preclusion from defending an action where he could have defended a prior action concerning the same transaction or occurrence on the grounds now raised in defense. *Johnson's Island,* 69 Ohio St.2d at 244–246, 23 O.O.3d 243, 431 N.E.2d 672 (the doctrine of res judicata is applicable to defenses that could have been raised in a prior action).

{¶ 22} The rationale for such a holding can be seen in the historical terminology. Claim preclusion was previously called estoppel by judgment or merger and bar. The term merger meant that when a plaintiff or his privy won an action, his claim merged into his judgment, and the privy could later sue that same defendant on the same cause of action for damages. The defendant could not bring newly discovered defenses to redefend the action. The defendant was estopped from defending an action due to the prior judgment.

{¶ 23} Although *Johnson's Island* was a close decision, the holding has been cited and followed ever since. See *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178. See, also, *Independence Excav., Inc. v. Twinsburg*, 9th Dist. No. 20942, 2002-Ohio-4526, 2002 WL 2009464. In fact, this court has followed the *Johnson's Island* holding and applied res judicata to bar a defendant from raising defenses in a foreclosure action that he could have raised in the prior action. *Italiano v. Commercial Fin. Corp.*, 148 Ohio App.3d 261, 2002-Ohio-3040, 772 N.E.2d 1215, at ¶ 29, 34, 35. See, also, *Packer, Thomas & Co. v. Eyster* (1998), 126 Ohio App.3d 109, 117, 709 N.E.2d 922.

{¶ 24} As will be discussed below, summary judgment is proper on this doctrine because either (1) there is a final decision on the merits on this cause of action regarding appellees' privies, and thus appellants are barred by claim preclusion from now raising certain defenses because they did unsuccessfully or could have raised most of their defenses in the prior action on the same claims against the Stock Incentive Plan, or (2) in responding to appellees' summary judgment motion, appellants failed to meet their reciprocal burden of showing that certain defenses were inapplicable to the *Agostinelli* plaintiffs and thus could not have been raised previously. As will be seen, this problem plagues appellants throughout this appeal.

{¶ 25} There is also the matter of our prior legal decisions. In the first *Agostinelli* case, this court held that the language in the Stock Incentive Plan was clear and unambiguous and that it required payment of all unearned but allocated deferred stock to the participants upon the change in control that occurred on August 6, 1996. In the second *Agostinelli* case, this court set forth law regarding the proper formulation of damages in a case such as this and found waiver and/or no double recovery for severance payments. The Supreme Court refused to review that decision. Thus, summary judgment was also properly entered by the trial court as a matter of law on the arguments involving legal decisions already determined by this court.

{¶ 26} Next, we turn to appellants' subassignment that urges us to prohibit appellees from relying on issue preclusion to establish their case since they took a "wait and see" approach to the *Agostinelli* lawsuit. Appellants cite case law holding that the offensive use of issue preclusion can be disallowed in the

federal courts if it would be unfair or if the plaintiff could have easily joined in the earlier action. See *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552.

{¶ 27} At the outset, we note that the summary judgment in this case need not rely on issue preclusion. As stated above, in Ohio, *claim* preclusion can be used to bar defense against a claim where the defendant previously failed to raise the defense now attempted or failed to establish why he could not have raised such defense previously. We also note that it is preferable to use the doctrine of case-law precedent over the doctrine of issue preclusion in those cases where both apply to legal issues already determined. Although prior S.Ct. R.R.Op. 2(G) provided that unreported opinions are not binding, the trial court can rely on our prior decision on legal matters and assume that this court would abide by its prior decision on exactly the same legal issues, especially as to our interpretation of exactly the same contract.

{¶ 28} In any event, the *Parklane* holding was specifically applied only to the federal courts. See id. Federal courts have different rules on preclusion than the state of Ohio. In fact, a "wait and see" approach is common in the realm of lawsuits. For instance, the approach is a valid trial tactic in product liability cases. We also note that appellants herein were not surprised at the existence of other claimants.

{¶ 29} For all of the foregoing reasons, in resolving this general assignment of error, we hold that the trial court correctly determined that res judicata is applicable herein and that prior appellate case law can be followed on various legal issues. We must now review the other assignments of error to more specifically apply the doctrines set forth above. We shall start with the most contentious of the issues.

## ASSIGNMENT OF ERROR NO. FOUR

{¶ 30} Appellants' fourth assignment of error contends:

{¶ 31} "The trial court erred in granting plaintiffs' motion for summary judgment because defendants are entitled to summary judgment as a matter of law based on the plain language of the June 1996 employment agreements signed by plaintiffs, which constituted a novation or modification of their employment agreement and the plan."

{¶ 32} As stated above, appellees sought summary judgment on the grounds of res judicata or claim preclusion, issue preclusion, and stare decisis. They urged that the present suit and the *Agostinelli* suit contain the same facts, the same cause of action, the same contract, and the same defendants. They attached their

own affidavits stating that they are in the same situation as the *Agostinelli* plaintiffs and that they received awards of 9,000 shares with 900 paid so far.

{¶ 33} They also attached other documents. The Stock Incentive Plan and its Guidelines were attached as an exhibit and had already been attached to their complaint as per Civ.R. 10(D). That rule provides that when any claim or defense is founded on an account or other written instrument, a copy thereof must be attached to the pleading. Also attached to appellees' complaint was a letter informing them of their original allocation. See Civ.R. 10(D). Sworn pleadings constitute evidence for purposes of Civ.R. 56(C). See *State ex rel. Spencer v. E. Liverpool Planning Comm.* (1997), 80 Ohio St.3d 297, 298, 685 N.E.2d 1251 (an affidavit is not required to establish facts set forth in the verified complaint).

{¶ 34} Appellees' summary judgment motion also attached the complaint in *Agostinelli.* Although it was not certified by stamp or otherwise verified by affidavit, the court can still choose to review it, since no objection was voiced to any lack of authentication. See *Spencer,* 80 Ohio St.3d at 301, 685 N.E.2d 1251 (court may consider evidence other than that in Civ.R. 56 where no objection is raised, but need not). In any case, this court's own prior decisions need not be attached and certified or authenticated by affidavit in order to be reviewed when cited. And the details of *Agostinelli* can be fully gleaned from our two prior decisions in the case. Regardless, the complaint in the present case combined with the appellees' affidavit fully alleges the reasons for application of the doctrine of claim preclusion.

{¶ 35} Appellants filed an abbreviated cross-motion for summary judgment setting forth their defenses. They then responded to appellees' summary judgment motion by urging that there was no mutuality of parties and no mutuality of issues. In supporting their claimed lack of mutuality of issues, they urged that the novation issue was not actually litigated in the *Agostinelli* suit. Then, to support the merits of their novation defense, they attached letters written to appellees on June 1, 1996. The letters proposed each employee's status after the merger, reviewing issues such as salary, bonus, insurance, severance, and deferred stock. The letters stated, "With regard to your continued eligibility to earn awards of deferred SDG stock under the Long–Term Incentive Plan for 1996, 1997 and 1998, *you need to acknowledge that you understand the substitution of SDG stock for DeBartolo stock,* the revised FFO targets and you are consenting to the other terms and conditions hereof by signing and dating this letter on the spaces indicated below * * *." (Emphasis added.)

{¶ 36} The trial court granted summary judgment for appellees, wherefrom it can reasonably be inferred that the court concluded that the aforementioned clause in its entirety was barred by res judicata combined with case law out of

our court. On appeal, appellants urge that appellees' signatures on the letters prior to the change in control and/or their continued employment constitutes novation or modification of any rights they may have had to vesting of allocated DRC stock upon a change in control.

{¶ 37} The doctrine of novation includes both novation of contract and novation of parties. Novation requires an agreement between the creditor and his debtor which is intended to extinguish the old obligation by substituting a new party, a new obligation, or both. *Fed. Land Bank of Louisville v. Taggart* (1987), 31 Ohio St.3d 8, 14, 31 OBR 6, 508 N.E.2d 152. For instance, a written contract whereby one employs another to render services may be discharged as to the employer by the assumption of its obligations to the employee by a third person with the knowledge, consent, and acceptance of the employee, which may be proven by parol evidence and implied from the facts and circumstances. *Globe Ins. Co. v. Wayne* (1907), 75 Ohio St. 451, 471, 80 N.E. 13.

{¶ 38} Appellees respond that the language concerning substitution of DeBartolo for Simon stock merely refers to the facts that DeBartolo stock was being exchanged for Simon stock at a .68 exchange ratio and that the employees would earn Simon stock in the same amounts previously available to them under the DeBartolo plan, using a new plan with new goals. Appellees' alternative and overriding argument is that appellants' novation arguments are barred due to the prior *Agostinelli* decisions against them.

{¶ 39} As we set forth in discussing the prior assignment of error, claim preclusion bars raising defenses that could have been raised in the prior suit involving the same transaction or occurrence and the same parties or their privies. We have already found that any defense is barred in this suit if it was either unsuccessfully raised in *Agostinelli* or if it was not raised but could have been.

{¶ 40} Before delving into the summary judgment burdens, we note that there are many indicators that appellants could have raised novation in the prior suit. For example, the second *Agostinelli* appeal mentioned how a severance program was created for those employees who stayed through the merger. Appellants' first counterclaim in that action asked for setoff, complaining that 13 *Agostinelli* plaintiffs received severance benefits under this plan but failed to sign a release of claims. Additionally, as a defense in *Agostinelli*, appellants asserted a right to setoff against two other employees who received severance benefits *after* the merger due to golden parachute provisions. Moreover, in the second *Agostinelli* appeal, appellants set forth a defense of double recovery because the employees received stock-stay bonuses. They focused on the fact that these bonuses for staying through the merger were equal to the amount of DRC deferred stock

unearned in 1995. Further, when appellants argued partial payment in *Agostinelli* due to the Simon allocation being substituted for DeBartolo deferred stock and paid as a stock-stay or severance bonus, we initially stated that they waived such a defense by failing to place it in their answer. The letters may very well have been recognized in the *Agostinelli* case. From these historical issues, it can at least be seen that the *Agostinelli* plaintiffs stayed through the merger just as these plaintiffs did. But we digress.

{¶ 41} Pursuant to Civ.R. 56(C), summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The test is met if, after construing the evidence or stipulation in the light most favorable to the nonmovant, it can be stated that reasonable minds can only come to a conclusion in favor of the movant. Civ.R. 56(C).

{¶ 42} Civ.R. 56(E) then provides:

{¶ 43} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 44} Appellees met their initial burden to allege and demonstrate that there was no genuine issue of material fact as to their action because they were in privity with the *Agostinelli* plaintiffs regarding the same breach of the same contract, and thus the defendants are bound by the prior judgment. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294–295, 662 N.E.2d 264 (movant must disclose basis for motion and support it with evidence). From reviewing the complaint, the affidavits submitted and our prior decisions, the basic elements of claim preclusion are established. The affidavits claim that appellees are in the same group as the *Agostinelli* plaintiffs. The complaint swears to the various methods by which claim preclusion bars relitigation of the cause of action.

{¶ 45} It is important to note that this is not the typical plaintiff's summary judgment motion that simply claims there is no genuine issue because the defendant cannot prove his defense of novation. Rather, this motion revolved around the premise that regardless of the merits of the novation defense, the claiming of this defense is precluded due to a prior lawsuit involving the same transaction or occurrence and the same parties or their privies. In other words, novation was not a defense to claim preclusion; novation was just a defense to a complaint alleging breach of contract for the payment of money. The evidence

establishing claim preclusion generally trumped the novation defense. Then, it fell to appellants to respond by asserting that there is a genuine issue of material fact (by alleging and showing through evidence that, for instance, they could not have raised novation in *Agostinelli*). See *Luchansky v. Crane* (Nov. 23, 1999), 7th Dist. No. 97CA164, 1999 WL 1124761 (movant's drawing court's attention to prior appellate decisions arising out of same incident meets summary judgment burden on res judicata claim and shifts burden to nonmovant to point to specific facts showing that there is a genuine issue for trial).

{¶ 46} We must note that in responding to the summary judgment motion, no affidavit was put forth to verify the letters set forth by appellants to support their novation defense. Civ.R. 56(C) provides that no evidence or stipulation may be considered except as stated in the rule. Civ.R. 56(E) provides that sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. Thus, technically appellants set forth no proper summary judgment evidence even mentioning novation. Since appellees did not object to appellant's attachment of these bare letters, we can choose to proceed with our analysis, although we need not. See *Spencer*, 80 Ohio St.3d at 301, 685 N.E.2d 1251.

{¶ 47} Even if the letters establish a genuine issue regarding novation, they do not establish how that affirmative defense prevails over the doctrine of claim preclusion. In order to meet their reciprocal burden of establishing that there is a genuine issue of material fact as to why claim preclusion is inapplicable, appellants should have alleged that it was only these two employees who received the June 1, 1996 letters.

{¶ 48} Rather than alleging that they did not send a similar letter to any of the 28 prior plaintiffs, appellants focused their arguments on issue preclusion. They urged that there was no mutuality of issues because novation was not actually decided and litigated in the prior suit. However, this ignored the application of the doctrine of claim preclusion, which was a main part of appellees' summary judgment motion. The doctrine of claim preclusion does not deal only with what was actually raised and decided. Claim preclusion also deals with what *could have been* raised and decided. See analysis in Assignment of Error No. One.

{¶ 49} Appellants did not contend that they could not have raised the defense before; they just stated that the issue was not decided previously. Reasonable minds cannot find that it was impossible for appellants to have raised the defense of novation when appellants themselves do not so allege. Further, it is appellants who were in the position to know if they themselves had sent the *Agostinelli* plaintiffs a similar type of letter. Appellants were the only ones who could enlighten us as to why claim preclusion does not apply to bar the novation defense.

{¶ 50} In conclusion, appellants failed to allege that novation applied only to these two plaintiffs and not any of the 28 *Agostinelli* plaintiffs. The defense of novation or modification due to postmerger employment after receipt of the letter is barred by claim preclusion for the failure to offer this defense in the prior action. If the defense could not have been raised therein, it was appellants' burden to allege this in responding to appellees' summary judgment motion, which showed that there was no genuine issue of material fact due to claim preclusion. This assignment of error is overruled. We move now to a related assignment of error.

## ASSIGNMENT OF ERROR NO. FIVE

{¶ 51} Appellants' fifth assignment of error provides:

{¶ 52} "The trial court erred in granting plaintiffs' motion for summary judgment and denying defendants' cross motion for summary judgment because plaintiffs' claims also are barred by waiver and estoppel."

{¶ 53} Appellants argue that appellees waived their right to the allocated shares by accepting new employment that included substituted Simon stock in the form of severance benefits and/or new performance bonuses. They reallege that certain benefits available by working for Simon were paid out of the prior DeBartolo deferred stock. Appellants similarly argue that appellees should be equitably estopped from seeking their allocation because their acceptance of continued employment with Simon induced Simon to rely on certain facts.

{¶ 54} Once again, appellants fail to establish why they could not have raised this defense in the *Agostinelli* lawsuit. Those plaintiffs also accepted new employment at Simon and at least received the severance benefits that appellants alleged were converted from the original DeBartolo allocation that was available for earning in 1995 but was never earned.

{¶ 55} In fact, these waiver and estoppel arguments are basically encompassed in the partial-payment or double-recovery defenses rejected previously. Thus, appellants are barred by claim preclusion. In the alternative, they are now barred for failing to raise waiver and estoppel as defenses when they were available in the prior action. Or at least, appellants failed to meet their reciprocal burden of showing under Civ.R. 56(E) why these defenses could not have been raised previously. This assignment of error is overruled under the rationale discussed in the prior assignment of error regarding the novation defense.

## ASSIGNMENT OF ERROR NO. TWO

{¶ 56} Appellants' second assignment of error contends:

{¶ 57} "The trial court erred in granting plaintiffs' motion for summary judgment and denying defendants' cross motion for summary judgment because no deferred stock agreement exists with respect to plaintiffs and, therefore, no deferred stock awards were outstanding with respect to plaintiffs at the time of the August 1996 merger."

{¶ 58} The Stock Incentive Plan provides that accelerated vesting of "deferred stock awards outstanding" would occur upon a change in control. We held that this "deferred stock awards outstanding" language means all originally allocated shares, regardless of whether they have been earned.

{¶ 59} Appellants now point to Section 6(B)(v) of the Stock Incentive Plan, which states: "Each Deferred Stock Award shall be confirmed by, and subject to the terms of, a Deferred Stock agreement executed by the company and the participant."

{¶ 60} As a defense to the same cause of action that was before the court in *Agostinelli*, appellants claim that as a matter of law there can be no deferred stock award outstanding (payable upon a change in control) unless there is full compliance with Section 6(B)(v). Appellants state that the July 1994 letter attached to the complaint is not a deferred stock agreement because it was executed only by the company and not by either appellee/participant as required by the Stock Incentive Plan. They also complain that the letter does not mention that the shares would be awarded upon a change in control.

{¶ 61} We have previously interpreted the Stock Incentive Plan as requiring payment of all originally allocated shares upon change in control. A letter providing evidence of the amount of shares originally allocated need not state all of the terms contained in the Stock Incentive Plan in order to be a valid statement of allocation.

{¶ 62} Appellants concede that the July 1994 letter of allocation was signed by the employer, who is the party to be charged. Although the Stock Incentive Plan provides that the deferred stock award shall be confirmed by and subject to the terms of a deferred stock agreement executed by both the company and the participant, this does not mean that no deferred stock award is outstanding merely because the participants did not sign the letter they received disclosing their respective allocations.

{¶ 63} The Stock Incentive Plan is the contract we interpreted to mean that all allocated shares shall be paid at merger. The July 1994 letter is a letter evidencing how many shares the company allocated to these appellees. The company allocated these shares without asking for the employees' signature. In fact, they later paid ten percent of the allocation to appellees even though they

never signed the original allocation letter. Rather, they sought the participants' signatures only at the time of payment.

{¶ 64} It seems likely that the reason the employer did not seek the employees' signatures at allocation was because of their interpretation of the Stock Incentive Plan, which we discarded in the first *Agostinelli* case. That is, they did not believe that the allocation was an award, and thus they did not seek employees' signatures on the allocation; they believed that an award did not occur until earning, and thus they did not seek an employee's signature until earning.

{¶ 65} Notably, there is no allegation of reciprocal promises that the employees would be signing for when accepting the allocation. Thus, a lack of signature at allocation did not affect the employer in any way. As argued by appellees, if it is relevant, it is de minimis. Hence, this assignment of error lacks merit.

{¶ 66} Further, appellants should not be able to use our holding in combination with their prior rejected interpretation to argue that the signature of an employee (who is not the party to be charged) is required in order to receive the shares payable upon merger. They allocated shares and later paid ten percent of these shares regardless of the alleged lack of signature on the original allocation. In actuality, it appears that they are trying to relitigate the legal issue of what a deferred award outstanding means. They do not appear to be arguing that an allocation of shares with potential for earning never took place; instead, it seems that they are disputing that the allocation was an award to be distributed under the plan. Our prior reading of the plan found as a matter of law that the allocation is distributable upon merger regardless of whether it was ever earned.

{¶ 67} In any event, appellants failed to raise this defense in the prior action. There is no evidence cited in appellants' response to appellees' summary judgment motion or in appellants' cross-motion for summary judgment establishing that they could not have raised this defense in the prior action. Although appellants did not agree that they were bound by res judicata in any way, and although they set forth a competing motion for summary judgment, they were still obligated to meet their reciprocal burden in responding to appellees' motion for summary judgment just in case the court disagreed with their disposal of the mutuality issue.

{¶ 68} In order to establish that they could not have raised this defense regarding signature for allocation in the prior action, they essentially had to establish that the *Agostinelli* plaintiffs signed the letter of allocation but that these plaintiffs did not. Merely because the letter was attached to the current complaint and was not attached to the *Agostinelli* plaintiffs' complaint does not mean that the defense was not available. In fact, appellees attached the letters only to their amended complaint in response to appellants' raising of this new defense.

{¶ 69} According to appellants' portrayal of this lack-of-signature defense, the *Agostinelli* plaintiffs could not have established their case had this defense been raised at that time. However, appellants failed to raise it in the prior action. Thus, as set forth in the first assignment of error, claim preclusion bars that defense. Additionally, our prior decision ruled on the legal issue of how a contract with this wording should be interpreted, and our decision can be followed in this case. This assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. THREE

{¶ 70} Appellants' third assignment of error contends:

{¶ 71} "The trial court erred in granting plaintiffs' motion for summary judgment and denying defendants' cross motion for summary judgment because plaintiffs' action is time barred since it is beyond the six year statute of limitations for oral agreements."

{¶ 72} This assignment of error is based upon the arguments set forth in the preceding assignment of error. In essence, the contention is that since the employees did not sign the July 1994 allocation letters, there is no "Deferred Stock Agreement" which the Stock Incentive Plan requires in order for there to be a binding obligation. For this assignment of error, appellants contend that the three documents attached to appellees' first amended complaint do not constitute a written contract for purposes of the 15–year statute of limitations contained in R.C. 2305.06. Thus, appellants conclude that the six-year statute of limitations for express or implied contracts not in writing is applicable and has run.

{¶ 73} First, we note that appellants could not have raised the six-year statute of limitations for implied and oral contracts against the *Agostinelli* plaintiffs because those plaintiffs sued immediately after the change in control and refusal to pay, whereas appellees waited more than six years from the change in control. However, appellants' statute-of-limitations argument relates to their allegations of the lack of evidence of a signed deferred stock agreement, which could have been raised for other purposes as set forth above. Still, we shall continue to address this assignment under the assumption that appellants did not have the same incentive to argue the lack of signing on the letters where there were no statute-of-limitations issues.

{¶ 74} Pursuant to R.C. 2305.06, an action upon an agreement, contract, or promise in writing shall be brought within 15 years. As appellants note, the test for the writing requirement in this statute of limitations is different from the statute-of-frauds test. See R.C. 1335.05 (there can be no action to charge defendant upon agreement not to be performed within one year from making

unless the agreement on which the action is brought or some memorandum or note thereof is in writing and signed by the party to be charged). For the statute of frauds, a memorandum or note *evidencing* a contract can be sufficient.

{¶ 75} However, for purposes of the statute of limitations, a memorandum or note citing a prior oral agreement will not bring the case within the 15–year statute of limitations. *First Natl. Sec. Corp. v. Hott* (1954), 162 Ohio St. 258, 262, 55 O.O. 141, 122 N.E.2d 777. Such memorandum or note can be evidence that the contract exists, but it is not the written contract for purposes of R.C. 2305.06. Id. Although if the action is actually brought upon that written memorandum or note rather than upon the prior oral or implied agreement, then the 15–year statute of limitations may apply. See id.

{¶ 76} For instance, an employer sued its sales manager for breach of an oral agreement. This agreement allegedly called for 40 percent of net profits to be paid as commissions to the sales manager or 40 percent of net loss to be recouped by the employer. The sales manager wrote a letter a year after the oral contract in which he stated that he had expected a 40 percent commission from a certain sale and acknowledged a 40 percent offset from a certain loss.

{¶ 77} The Supreme Court held that a written memorandum that merely evidenced an oral contract did not convert that oral contract into a writing for purpose of the statute of limitations for suing on contracts. Id. at 262, 55 O.O. 141, 122 N.E.2d 777. The court noted that a memorandum acknowledging an oral contract can help prove the existence of the oral contract (and may extend the statute of limitations accruing until the memorandum's date) but the contract remains oral and subject to the six-year statute of limitations. Id. The court noted that its holding did not touch upon the issue of an action to enforce the memorandum as a written promise in and of itself. Id.

{¶ 78} By way of further example, this court was faced with a case where the complaint was predicated upon a real estate listing agreement that was not attached to the complaint, was not alleged to be written, and thus was assumed to be oral. Although written materials confirming that a prior agreement had been entered were attached to the complaint, we held that the agreement itself was not in writing, and the later writings alleged to be evidence of the prior contract do not transform the oral contract into a written contract for purposes of the statute of limitations. *Meikle v. DeBartolo Corp.* (Nov. 7, 2001), 7th Dist. No. 00CA58, 2001 WL 1468563.

{¶ 79} The Tenth District has stated that the writing requirement for the statute of limitations requires that the action grow out of a written instrument that either acknowledges indebtedness or promises to pay in such a way as to make supplemental evidence unnecessary. *Regina Apts., Inc. v. Village Green,*

*Inc.* (1978), 60 Ohio App.2d 345, 347, 14 O.O.3d 301, 397 N.E.2d 420 (finding that a check containing the word "loan" is not a writing as it could mean payment on a loan or granting of a loan), citing *Rudolph Bros. v. Husat* (1961), 90 Ohio Law Abs. 1, 25 O.O.2d 376, 187 N.E.2d 190 (where a sales slip signed by the defendant at delivery was not found to be a writing). The Tenth District later added that although the instrument must clearly define an obligation without reference to supplemental evidence to establish the existence of the agreement, the instrument need not contain a sum certain. *Claxton v. Mains* (1986), 33 Ohio App.3d 49, 51, 514 N.E.2d 427 (finding it irrelevant that the total amount due could not be discerned without use of supplementary evidence).

{¶ 80} The Second District found a writing sufficient for statute-of-limitations purposes where the writing merely stated that $150 is due to plaintiff from defendant and was signed by the defendant. *Davis v. Eyler* (1930), 37 Ohio App. 210, 212, 174 N.E. 360. That court found a definite and distinct acknowledgement that money was due. Id.

{¶ 81} The Sixth District has held that a union card signed by the union member that did not set out the terms of the agreement, but which did refer to the union constitution and bylaws, was a sufficient writing for purposes of the 15–year statute of limitations. *Internatl. Bhd. of Elec. Workers v. Gromnicki* (2000), 139 Ohio App.3d 641, 645, 745 N.E.2d 449. The court interpreted the Tenth District's *Claxton* case as meaning that the face of the writing must contain the terms of the contract or state that the existing terms of the contract are set forth in another referenced document. Id. The court noted that the fact that the contract is comprised of more than one document is irrelevant. Id., citing *Brown's Run Country Club v. Brown* (Oct. 2, 1995), 12th Dist. No. CA95–03–048, 1995 WL 577650, citing Annotation, What Constitutes a Contract in Writing Within Statute of Limitations (1949), 3 A.L.R.2d 809, 819, Section 8.

{¶ 82} The Ninth District has noted that the instrument need not be signed by the party who is now suing in order to satisfy the writing requirement for the statute of limitations. *Weaver Sheet Metal v. Akron Insulating Co.* (Jan. 3, 1996), 9th Dist. No. 17312, 1996 WL 1772, citing *Brown's Run* and Annotation, What Constitutes a Contract in Writing Within Statute of Limitations.

{¶ 83} In the case before us, appellants' issue with the Stock Incentive Plan concerns their interpretation that there is no obligation unless a deferred stock award is signed by both the company and the employee. They state that the July 1994 allocation letter is not a deferred stock award sufficient to trigger an obligation because the employees did not sign the letter, although the company did.

{¶ 84} The test for the 15–year statute of limitations contained in R.C. 2305.06 deals with whether the action is brought upon an agreement in writing. The test

for whether the writing is sufficient for purposes of this statute of limitations does not change because one of the writings defines its obligations by requiring a writing stricter than the statute of limitations. Although the contractual requirements imposed on a later writing may be a defense on the merits, they do not alter the requirements of a writing for purposes of the statute of limitations.

{¶ 85} Unlike our *Meikle* case, the aforementioned 1994 letter is not a mere memorandum or note evidencing a prior oral agreement. Rather, the letter, signed by the employer, establishes the allocation for each employee available under the obligations set forth in another written instrument. The fact that one needs to refer to the Stock Incentive Plan to determine the conditions under which the allocation is payable does not diminish the quality of the letter as a writing.

{¶ 86} Regardless, the Stock Incentive Plan is a sufficient writing. The mere fact that the total amount due to each employee cannot be determined from the plan does not mean that it is not a writing for purposes of R.C. 2305.06. See *Claxton,* 33 Ohio App.3d at 51, 514 N.E.2d 427. The plan sufficiently establishes obligations to qualify as a writing; its referral to a signed award for determination of the amount allocated does not destroy its use as a written agreement upon which an action could be based within 15 years. Id. See, also, *Gromnicki,* 139 Ohio App.3d at 645, 745 N.E.2d 449.

{¶ 87} Under the prevailing case law in Ohio, appellants' arguments concerning the statute of limitations fail. Hence, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. SIX

{¶ 88} Appellants' sixth assignment of error contends:

{¶ 89} "The trial court erred in granting plaintiffs' motion for summary judgment and denying defendants' cross motion for summary judgment because the trial court entered final judgment against the wrong parties."

{¶ 90} Appellees filed this suit against DRC and DPMI. In a motion to dismiss, SPG Properties, Inc. stated that it is the successor in interest to these companies. In the introductory summary of arguments of their motion for summary judgment, appellants argued that neither DRC nor DPMI was a proper party defendant.

{¶ 91} First, appellants argued that DPMI was not a proper party defendant, since DRC was the only sponsor of the Stock Incentive Plan and the Plan involved only DRC's stock. Appellants then argued that DRC is not a proper party defendant since it no longer existed at the time this suit was commenced. Appellants explain that as a result of the August 1996 merger, DRC changed its name to SD Property Group, Inc. (or Simon DeBartolo Property Group, Inc.).

Then, on February 20, 2000, SD Property Group, Inc. was merged out of existence, leaving only SPG Properties, Inc.

{¶ 92} Appellants attached certificates from Ohio's Secretary of State reflecting DRC's name change to SD Property Group, Inc. and SD Property Group, Inc.'s subsequent merger out of existence. Although they do not specifically state this, it appears that appellants believe that SPG Properties, Inc., as the successor in interest to DRC, is the only potential defendant. Appellees did not name this entity as a defendant.

{¶ 93} In responding to appellants' argument before the trial court, appellees' reply requested the right to amend their complaint to add Simon Property Group in accordance with appellants' wishes. The trial court ended up granting summary judgment in favor of appellees and denying appellants' cross-motion for summary judgment. Thus, the complaint was never amended to add Simon, and the current judgment is against DRC and DPMI.

{¶ 94} Appellants now argue that by asking to amend, appellees conceded that they sued the wrong party. However, appellees merely asked to amend in order to avoid appellants' argument. In fact, they only wished to add, not substitute, Simon. They did not ask to dismiss the suit as to DRC and DPMI. Thus, by their request to amend, appellees did not make concessions as to appellants' arguments on the proper defendants. We thus continue to address whether appellants established that these defendants were improper as a matter of law.

{¶ 95} The *Agostinelli* plaintiffs sued both DRC and DPMI. The *Agostinelli* complaint stated that plaintiffs are all employees or former employees of DRC and/or DPMI and are participants in DRC Stock Incentive Plan. That complaint noted that the plan defined "affiliate" as DPMI and any other corporation or entity in which the company has a substantial direct or indirect ownership interest. The complaint explained that DRC and its affiliates merged with Simon Properties Group, Inc. and became a wholly owned subsidiary of Simon. Appellees' complaint makes these same statements.

{¶ 96} DPMI is listed as an affiliate in the plan. The plan then states that employees of the company, its subsidiaries, and affiliates are eligible to be granted awards. The purpose of mentioning DPMI here was to allow DPMI employees to participate in earning DRC stock. The plan also states that the company, its subsidiaries, and its affiliates have the right to deduct taxes from payments made to the participants. Although it is not DPMI stock being earned under the plan and although DRC is listed as the plan sponsor, this does not mean that DPMI is not a proper party to this lawsuit.

{¶ 97} Notably, the June 1, 1996 letters relied upon by appellants as evidence of novation are written on letterhead with simply "DeBartolo" in large bold print,

and then under that in smaller print, the letterhead specifically states, "DeBartolo Properties Management, Inc." A July 18, 1994 form letter establishing the original allocations of deferred stock is written on this same letterhead. This letter expressly states that "the Compensation Committee of the Board of Directors of DeBartolo Corporation and DeBartolo Properties Management, Inc. has approved your participation in the Stock Incentive Program * * *." The July 18, 1994 allocation letter specifically sent to these individual appellees states the same and is on a letterhead with only "DeBartolo Properties Management, Inc." typed in large bold print. The letter was signed by management for DPMI. Just because it was not DPMI stock being earned does not mean that DPMI did not breach a contract, especially considering that the Compensation Committee who makes the allocations, award, and decisions to pay is acting for both companies.

{¶ 98} Moreover, the complaint alleges that appellees are former employees of DRC and/or DPMI. Appellants did not allege that appellees were not employed by DPMI as well as DRC. In fact, appellants' own exhibits are 1995 letters, which these appellees had to sign in order to authorize *DPMI* to pay withholding tax upon the payment from the 800 shares of stock they earned from meeting 1994 goals. Another of appellants' own exhibits in the form of a letter from Simon to appellees notes, "You will continue to participate in your current benefits until SPG and *DPMI* benefit programs are consolidated." (Emphasis added.)

{¶ 99} For all of the above reasons, DPMI was not an improper party defendant. Additionally, appellants do not state if they did or why they could not have raised this argument as a defense in the *Agostinelli* lawsuit.

{¶ 100} As for DRC, the *Agostinelli* suit was filed in 1996, before SDG's February 2000 merger out of existence. However, DRC stopped existing at the time of the 1996 merger. See R.C. 1701.82(A) (when a merger or consolidation becomes effective, the separate existence of each constituent entity other than the surviving entity in a merger shall cease). Yet, appellants did not make this complaint in the *Agostinelli* litigation.

{¶ 101} Regardless, upon merger or consolidation, all the rights of creditors of each constituent entity are preserved unimpaired. R.C. 1701.82(A)(5). The relevant legal ramifications are the same for both merger and consolidation. See, e.g., R.C. 1701.81(B)(1)(g), 1701.82(A)(4) and (5). Regardless of what the author of some treatise cited by appellants believes the procedure for naming defendants should be, Ohio corporate law specifically provides:

{¶ 102} "The surviving or new entity is liable for all the obligations of each constituent entity, including liability to dissenting shareholders. Any claim existing or any action or proceeding pending by or against any constituent entity may be prosecuted to judgment, with right of appeal, as if the merger or

consolidation had not taken place, or the surviving or new entity may be substituted in its place." R.C. 1701.82(A)(4).

{¶ 103} Pursuant to this statutory provision, appellees could file suit against the constituent entity as the party against whom a claim exists, *or* they could substitute the surviving or new entity in the constituent entity's place. Thus, appellants' argument is without merit. This assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. SEVEN

{¶ 104} Appellants' seventh and final assignment of error provides as follows:

{¶ 105} "The trial court erred in granting plaintiffs' motion for summary judgment because plaintiffs cannot recover prejudgment interest prior to their February 15, 2003 demand."

{¶ 106} Under this assignment of error, appellants argue that even if we disagree with their above arguments, then at least a portion of the damage award should be decreased. That is, prejudgment interest should not be calculated from the August 6, 1996 date of merger as it was for the *Agostinelli* plaintiffs, who demanded their shares within weeks of the merger. Rather, appellants claim that prejudgment interest should not be available to the current plaintiffs until February 15, 2003, the undisputed date of their first demand for the deferred stock. Appellants note that appellees consciously chose not to join the *Agostinelli* suit and waited six and a half years from the merger to request their unearned shares. Appellants conclude that such undue delay in demanding their shares should foreclose the recovery of prejudgment interest prior to the demand.

{¶ 107} Appellees respond that they are entitled to prejudgment interest from the date of merger, which is when the money became due and payable. Appellees direct us to the plain language of R.C. 1343.03(A). Appellees contend that the legislature chose not to penalize plaintiffs who do not immediately demand payment.

{¶ 108} The relevant statute provides:

{¶ 109} "In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, *when money becomes due and payable upon any* bond, bill, note, or other *instrument of writing,* upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, *the creditor is entitled to interest* at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is

entitled to interest at the rate provided in that contract." (Emphasis added.) R.C. 1343.03(A).

{¶ 110} Prejudgment interest is seemingly automatic in cases of breach of contract, unlike tort cases where the court must determine the good-faith settlement efforts after holding a hearing. See. R.C. 1343.03(C)(1). In contract cases, prejudgment interest is not a penalty for wrongdoing. Rather, it has been enacted in order to make the party whole, in that if the plaintiff was paid on the date the money was due and payable, then he would have had the use of his money and the defendant would not have been able to realize financial gain from withholding a contractual sum due and payable to another.

{¶ 111} The Supreme Court has pronounced that R.C. 1343.03(A) requires prejudgment interest to be awarded starting from the date the money became due and payable. *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 117, 652 N.E.2d 687. In a regular breach-of-contract case, "due and payable" has been defined as when the cause of action accrued. Id. In *Royal Elec.*, the court stated that prejudgment interest compensates a plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the sum is liquidated and even if the sum due is not capable of ascertainment until determined by a court. Id.

{¶ 112} Two dissenters opined that the General Assembly did not expressly state the period which prejudgment interest is to be paid and concluded that the court should not find that the period begins at the accrual date. Id. at 118, 652 N.E.2d 687 (Moyer, C.J., dissenting in part and concurring in part). The dissent preferred the prejudgment interest period to begin on the date the plaintiff filed the action, urging that this was the fairest rule. Id. The dissent noted that such a rule would obviate the circumstances under which the plaintiff could control the amount of prejudgment interest by delaying the filing of the lawsuit. Id. at 118–119, 652 N.E.2d 687.

{¶ 113} The dissenting viewpoint is compelling because, especially in written contract cases where the statute of limitations is 15 years, the plaintiff could determine that he would make more money at the guaranteed rate of prejudgment interest than he would make if he invested the money himself (incurring either a low rate of return or a high amount of risk). However, this view is not the majority rule. As aforementioned, appellants do not insist on the date of complaint as the dissenters in *Royal* urged, but they insist on our use of the date of appellees' demand for payment, February 15, 2003.

{¶ 114} Appellants cite one Ohio case to support their proposition. In that case, the plaintiff was injured in an accident in 1986, but did not file a claim with her insurer until 2000. Her insurer paid her claim, but would not pay prejudg-

ment interest. On appeal, the plaintiff argued that the money was due and payable on the date of the accident. The insurer argued that the money was due and payable when the plaintiff submitted the claim, and the insurer had reasonable time to investigate the claim. The Eighth District stated that when interest is due "depends on a myriad of factors, and therefore, must be resolved on a case by case basis." *Nethery v. State Farm Ins. Cos.* (2001), 146 Ohio App.3d 282, 286, 765 N.E.2d 967. The court held that one factor is unnecessary delay. Id. In applying this holding, the court first stated that the insurer did not delay when it paid within a reasonable time after plaintiff's notice. Id. The court then stated that any damage for delay between the accident and the notice of claim should be borne by the plaintiff, affirming the trial court. Id.

{¶ 115} First, that Eighth District case is not binding upon this court. Second, this case is distinguishable as the event underlying the liability (the accident) could not be known by the defendant without notice from plaintiff. Here, the merger was known by the defendants-appellants, and the Stock Incentive Plan did not require a demand from the participants upon a change in control to receive their shares. Cases involving insurance contracts are different from cases involving a breach of contract for failure to make a timely payment, because an insurer remains unaware of an obligation to pay until the insured informs it of his loss.

{¶ 116} The case law that must be reviewed is a Supreme Court case decided after *Royal Elec.* In that case, the trial court originally denied prejudgment interest, holding that an uninsured-motorist claim was based upon tort rather than contract. The Sixth Appellate District held that a plaintiff in an uninsured-motorist claim can receive prejudgment interest based upon contract and that the accumulation of interest pursuant to R.C. 1343.03(A) begins on the date the claim becomes due and payable. *Landis v. Grange Mut. Ins. Co.* (Feb. 21, 1997), 6th Dist. No. E–96–034, 1997 WL 77546. The court reversed the trial court's denial of prejudgment interest and remanded, without determining the date on which the plaintiff's claim became due and payable. Id.

{¶ 117} The Supreme Court agreed that an uninsured-motorist claim became due and payable based on an instrument of writing (the insurance contract) under R.C. 1343.03(A), allowing such plaintiffs to collect prejudgment interest without regard to the good-faith requirements of the tort portion of the statute. *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140. The court reiterated that prejudgment interest is not punishment, but merely a way to prevent one party to a contract from using money due and payable to another party for his own financial gain. Id. The court also noted that merely because the amount due and payable could not be determined until arbitration does not

bar recovery of prejudgment interest. Id., citing *Royal Elec.* The court then pronounced:

{¶ 118} "Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine." Id. at 342, 695 N.E.2d 1140.

{¶ 119} The court thus declared that although the existence of prejudgment interest in a contract case is not left to the trial court's discretion, the determination of the date upon which prejudgment interest accrued is subject to the trial court's discretion depending on the facts surrounding the date the money became due and payable in each case. We do note, however, that *Landis* was making a rule that applied in cases of uninsured-motorist claims. Uninsured-motorist cases are different from the typical breach-of-contract case because they depend on the liability of a third-party tortfeasor and because insurers must be informed of a claim before they can afford coverage. *Landis* did not overrule *Royal Elec.* Once again, the case of *Royal Elec.* was a typical breach-of-contract case that held that the money becomes due and payable on the date the cause of action accrued, which would be the date of the breach.

{¶ 120} In fact, in a later case not dealing with an uninsured-motorist claim, the Supreme Court restated the *Royal Elec.* holding by declaring that the plaintiff "was entitled to prejudgment interest on all damages determined by the [court] from the time of the accrual of the claim, i.e., the time that [plaintiff] had substantially completed its work on the project." *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.* (2002), 94 Ohio St.3d 54, 62, 760 N.E.2d 364 (applying a statute allowing prejudgment interest recovery against the state for the same period of time and at the same rate as is allowed between private parties). As for the trial court's discretion, the court explained that the factual determination for the trial court was to determine when the work was substantially completed as required for payment under the contract. Id. at 63, 760 N.E.2d 364. The court did not require a demand for payment in such a case.

{¶ 121} The Second Appellate District also decided a case on point where the HMO should have returned reserve funds to physicians. That court generally held that prejudgment interest in a breach-of-contract action was owed from the accrual of the claim until the judgment. *Westbrock v. W. Ohio Health Care Corp.* (2000), 137 Ohio App.3d 304, 324, 738 N.E.2d 799, citing *Royal Elec.* The court then specifically concluded that prejudgment interest was properly payable from the date on which the HMO should have returned the reserve to the physicians. Id. See, also, *Suttle v. DeCesare* (July 5, 2001), 8th Dist. No. 77753, 2001 WL 777016 (remanding for trial court's determination of when claim for breach of

contract due to buyer's dissatisfaction with construction of home became due and payable).

{¶ 122} In the case before this court, it was already determined that the money became due and payable under the contract at the time of change in control, which was determined to be the date of the August 6, 1996 merger. In fact, appellants do not dispute that awards were due and payable upon merger; they just dispute what an award is. The trial court thus awarded prejudgment interest from the merger date.

{¶ 123} Although these appellees did not demand their shares until February 2003, the contract did not require demand. Under *Royal Elec.* and *Complete Gen.*, prejudgment interest is payable from the date the claim accrued or the date the conditions of the contract required payment. It is undisputed that appellees' cause of action accrued on the date of the merger and that (under our prior holdings interpreting the contract) the money was due and payable on that date. Thus, the trial court did not abuse its discretion in determining that prejudgment interest was payable from August 6, 1996.

{¶ 124} We conclude by noting that although many may agree that the *Royal Elec.* dissenters speak the fairer rule, this is not yet the law in Ohio. We are bound to follow the law established by the legislature and interpreted by the Ohio Supreme Court. Although we may agree with the persuasive argument of a dissent, until the statute or the majority rule is changed, we must follow the established law and precedent.

{¶ 125} Finally, we note that there is evidence in the remainder of the statute that the issue at hand is not the result of legislative oversight. In dealing with actions based upon tortious conduct, R.C. 1343.03(C) specifies various dates for determining prejudgment interest. For instance, if the party required to pay has admitted liability in a pleading or acted with deliberate purpose to cause harm, then interest is computed from the date the cause accrued. R.C. 1343.03(C)(1)(a) and (b). In all other tort actions, prejudgment interest is payable from the date the party to be paid gave the written notice required by that section or from the date he filed the pleading on which later judgment is based, whichever period is longer. R.C. 1343.03(C)(1)(c)(i) and (ii).

{¶ 126} This demonstrates that the legislature has specifically contemplated the policies behind the dates used to calculate prejudgment interest. In doing so, it determined that for tort actions, prejudgment interest should normally be paid from the date of demand or the date of the complaint, with exception if liability is admitted or if the acts were deliberate. However, in contract actions, the legislature found it best if prejudgment interest is calculated from the date the money became due and payable under the contract.

{¶ 127} R.C. 1343.03(A) says nothing about demanding payment in order to start the accrual of prejudgment interest. The general effect of the *Landis* case was merely to clarify that the trial court's determination of when the money becomes due and payable is often based upon the particular facts of a case. The particular facts in this case dealing with when the money became due and payable revolve around the date of change in control, which fact was not disputed and was previously determined by this court. Accordingly, this assignment of error is overruled.

## CONCLUSION

{¶ 128} For all of the foregoing reasons, the trial court's judgment for appellees is affirmed. The parties have a sufficiently close relationship and mutuality of interest to fit under the Supreme Court's prevailing definition of privity. Also, under Supreme Court precedent, a party is barred by claim preclusion from raising defenses in an action that were ruled upon to his detriment or that could have been raised in a prior action.

{¶ 129} Most of the defenses raised by appellants herein are barred by the doctrine of res judicata. Had appellants raised various defenses in the *Agostinelli* suit such as novation, waiver, and estoppel, or had appellants satisfactorily demonstrated how such defenses could not have been raised at that time, appellants may have been successful in this suit, and in *Agostinelli* for that matter. However, their chance has passed.

{¶ 130} Appellants' arguments concerning the lack of the employees' signatures on the allocation letter, the statute of limitations, and the proper parties are without merit. Although appellants' contentions about prejudgment interest may be valid policy concerns, those concerns are the province of the legislature.

{¶ 131} The judgment is affirmed.

Judgment affirmed.

DONOFRIO, P.J., and DEGENARO, J., concur.