OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Callos Professional Employment, LLC, appeals the decision of the Mahoning County Court of Common Pleas that valued the shares of stock in Callos Professional of Defendant-Appellee, Lillian Greco, and awarded her that value plus interest. On appeal, Callos Professional argues six assignments of error, but those assignments of error are all meritless. Callos Professional has failed to provide this court with a record sufficient to review many of the issues it raises since it has not provided this court with a transcript or App.R. 9 alternative of a proceeding held on December 12, 2005. Moreover, it failed to raise some issues in a timely fashion. Of its remaining arguments, the evidence supports both the trial court's valuation of Greco's shares and the date from which prejudgment interest on that value would accrue. For these reasons, the trial court's judgment is affirmed.
 Facts {¶ 2} In 1995, Greco worked for Callos Professional Employment, Inc., a company which became affiliated with other Callos-titled companies. She and other employees were offered to purchase minority interests in Callos Professional Employment, Inc. and Greco purchased seven shares. Greco resigned her employment with the Callos-related companies in November 2001. On December 31, 2001, Callos Professional Employment, Inc. was merged into Callos Professional, the party in interest in this case.
 {¶ 3} On May 20, 2002, Callos Professional filed an action against Greco, claiming that she had to sell her shares back to the company because she had left her employment with the company. Greco counterclaimed, arguing she was a dissenting shareholder and demanding that she be given "fair value" for her shares. Greco moved for partial summary judgment on Callos Professional's claims against her and the trial court granted that motion. This court affirmed that judgment inCallos Professional Employment, L.L.C. v. Greco, 161 Ohio App.3d 531,2005-Ohio-2940.
 {¶ 4} After the case was remanded back to the trial court, it called the case for a *Page 2 
pretrial on December 12, 2005. After that pretrial, the court referred the case to a special master to determine the value of Greco's shares. The special master issued his report on May 8, 2006, concluding that Greco's shares were worth a total of $112,000.00. Both Callos Professional and Greco filed briefs with the trial court addressing the special master's findings. On July 6, 2006, the trial court adopted the special master's valuation of the stock and awarded interest to Greco from December 31, 2001, the date of the merger. Greco moved the court to voluntarily dismiss her remaining claims without prejudice on August 1, 2006, and the trial court granted that motion on October 4, 2006. In the meantime, Callos Professional moved the court to reconsider its decision on September 25, 2006, arguing, among other things, that the special master lacked the necessary impartiality to rule on the issues before him. The trial court did not rule on this motion before Callos Professional filed a timely notice of appeal from the trial court's October 4th judgment.
 Proof of Greco's Status as a Dissenting Shareholder {¶ 5} In its first of six assignments of error, Callos Professional argues:
 {¶ 6} "The trial court erred in its October 4, 2006 judgment entry in determining that Appellee qualified as a R.C. 1701.85 dissenting shareholder without any evidence in the record."
 {¶ 7} According to Callos Professional, the trial court never heard any evidence proving that Greco was, in fact, a dissenting shareholder, so it could not have properly made such a finding. Greco contends that the trial court held a hearing on December 12, 2005, where it had the opportunity to hear such evidence. Since that hearing is not transcribed and there is no App.R. 9 alternative, Greco urges this court to presume that the trial court did hear such evidence at that hearing. She also argues that Callos Professional invited any error in this regard by agreeing to have the special master value Greco's shares. Finally, Greco claims that there was evidence in the record supporting the trial court's judgment since an officer of Callos Professional had stated in a deposition that Greco was a dissenting shareholder.
 {¶ 8} R.C. 1701.85(A)(1) provides that a shareholder of a domestic corporation is *Page 3 
only entitled to relief as a dissenting shareholder "in compliance with this section."
 {¶ 9} "If the proposal must be submitted to the shareholders of the corporation involved, the dissenting shareholder shall be a record holder of the shares of the corporation as to which the dissenting shareholder seeks relief as of the date fixed for the determination of shareholders entitled to notice of a meeting of the shareholders at which the proposal is to be submitted, and such shares shall not have been voted in favor of the proposal. Not later than ten days after the date on which the vote on the proposal was taken at the meeting of the shareholders, the dissenting shareholder shall deliver to the corporation a written demand for payment to the dissenting shareholder of the fair cash value of the shares as to which the dissenting shareholder seeks relief, which demand shall state the dissenting shareholder's address, the number and class of such shares, and the amount claimed by the dissenting shareholder as the fair cash value of the shares." R.C. 1701.85(A)(2).
 {¶ 10} In her counterclaim, Greco alleged that she was a record holder of shares in Callos Professional and Callos Professional admitted this fact in its reply to the counterclaim. Callos Professional further admitted in its reply to the counterclaim that Greco had demanded the fair market value of her shares. These admissions can provide competent evidence supporting the trial court's judgment. Civ.R. 8(D); Steams v.Devecka, 5th Dist No. 2001AP110102, 2002-Ohio-3839, at ¶ 37.
 {¶ 11} However, these admissions are not enough to prove a claim for relief under R.C. 1701.85. For instance, Callos Professional specifically denied that Greco was a dissenting shareholder. Furthermore, it admitted neither that Greco's shares were not voted in favor of the proposal, that the demand for payment was made within ten days after the vote was taken, nor that the demand met the requirements of R.C. 1701.85(A)(2).
 {¶ 12} Greco claims that the trial court determined that she was a dissenting shareholder after a December 12, 2005 hearing. The only reference in the record to such a hearing is a judgment entry dated December 29, 2005. In that judgment entry, the trial court stated in whole as follows: *Page 4 
 {¶ 13} "Case called for Pretrial December 12, 2005. The matter is referred to a Special Master to determine the value of the shares only. The fees of the Special Master shall be assessed as costs. Any remaining issues shall be tried by this Court with a jury.
 {¶ 14} "Attorney Larry Richards shall be appointed as the Special Master. Should the Special Master need guidance from the Court, a Pretrial shall be set with all parties."
 {¶ 15} Callos Professional argued in a September 25, 2006, motion that the trial court had not yet decided whether Greco was a dissenting shareholder. However, the court responded that it had made this determination since it "was a necessary prerequisite to the Order of Reference to a Special Master for the purpose of valuing the seven (7) shares of stock. While not expressly stating such a determination, the determination that Lillian M. Greco is a dissenting shareholder is implicit in the Order of Reference for valuation."
 {¶ 16} Summing up, the record shows that the trial court held some kind of proceeding on December 12, 2005. At the conclusion of that proceeding, the trial court concluded that Greco was a dissenting shareholder who was entitled to relief under R.C. 1701.85. Callos Professional argues that the trial court did not hear any evidence at that proceeding. However, it has not provided us with either a transcript nor an App.R. 9 alternative of that December 12, 2005, proceeding.
 {¶ 17} It is well established that a party who is challenging the events which occurred in the trial court must provide the appellate court with the tools necessary to review that error. When an appellate court is provided neither a transcript nor an App.R. 9 statement of the evidence or proceedings, it "has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199. In this case, the trial court's judgment entries demonstrate that it decided whether Greco was a dissenting shareholder at the December 12th hearing. Callos Professional argues this was improper, but has not given this court any way of reviewing that decision. Accordingly, we must presume the regularity of the proceedings and conclude that the trial court heard the necessary evidence at that hearing. Callos Professional's first assignment of error is meritless. *Page 5 
 Notice and Opportunity to Be Heard {¶ 18} In its second assignment of error, Callos Professional argues:
 {¶ 19} "The trial court erred when it made a factual determination without affording notice or an opportunity to be heard or to present evidence."
 {¶ 20} Here, Callos Professional contends that the trial court could not have properly decided whether Greco was a dissenting shareholder at the December 12th hearing since Callos Professional was not put on notice that this issue would be decided at that hearing and was not given an opportunity to be heard at that hearing. Since Callos Professional has not provided this court with a transcript or App.R. 9 alternative of that December 12th hearing, we must presume that it had an opportunity to be heard at that proceeding.
 {¶ 21} Furthermore, due process rights may be waived. Butler v.Butler, 4th Dist. No. 02CA2833, 2002-Ohio-5877, at ¶ 10, citing D.H.Overmyer Co., Inc., of Ohio v. Frick Co. (1972), 405 U.S. 174, 185. Without a transcript of the December 12th proceeding, we must presume that Callos Professional waived any argument about notice at that hearing. The arguments in Callos Professional's second assignment of error are meritless.
 Value of Shares {¶ 22} In its third assignment of error, Callos Professional argues:
 {¶ 23} "The trial court erred in adopting the conclusion of value contained in the report of the special master."
 {¶ 24} According to Callos Professional, the Special Master overvalued the corporation because it double counted some assets and used the book value, rather than the market value, of other assets. However, this is not an accurate description of how the special master valued the corporation. In this case, the special master valued the corporation by adding the operating assets of the corporation to the non-operating assets of the corporation. The evidence shows that this was an acceptable way of valuing the corporation.
 {¶ 25} In essence, Callos Professional is arguing that the trial court's ultimate *Page 6 
valuation of the shares is against the manifest weight of the evidence. Appellate courts will not reverse a judgment as being against the manifest weight of the evidence when it is supported by some competent, credible evidence going to all the essential elements of the case.CE. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. When reviewing a judgment under this standard, appellate courts make every reasonable presumption in favor of the trial court's findings of fact. Myers v. Garson, 66 Ohio St.3d 610, 614, 1993-Ohio-0009; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.
 {¶ 26} Each party presented the special master with a report prepared by an accountant purporting to value the corporation. The expert presented by Callos Professional, Steven Steer, calculated the income of the corporation and valued it at $225,000.00. He then adjusted the corporation's book value to a market value, which resulted in an asset value of $916,000.00. Steer then multiplied the income value by 85% and the asset value by 15% and added these amounts together, to reach a value of $329,000.00.
 {¶ 27} The expert presented by Greco, Bruce Broyles, took issue with this approach. Broyles thought that the approach used by Steer omitted the value of assets owned, but not used by the business. He noted that affiliated companies owed the corporation $1,367,960.00. He felt that a more accurate calculation of the corporation's value would be to add these "nonoperating assets" to the income value, thereby valuing the corporation at $1,592,960.00.
 {¶ 28} Callos Professional argues it is a mistake to include these nonoperating assets in the corporation's value because it is "uncontested" that the affiliated companies who owe these amounts are worth approximately $6,000.00 and, therefore, these receivables are worthless. Callos Professional made this same argument in its response to the special master's report. However, Callos Professional has not pointed to any place in the record establishing this fact in either its response to the special master's report or in its appellate brief and an independent review of the record does not reveal any evidence establishing this fact. Furthermore, as pointed out by Greco, independent auditors established the value of these receivables as the amount relied upon by the trial court *Page 7 
before this litigation began.
 {¶ 29} In conclusion, Callos Professional argues that the trial court's ultimate award counted some assets twice, but this argument shows a misunderstanding of how value was calculated in this case. The special master and trial court rejected the method of valuation used by Steer. Instead, they accepted the valuation proposed by Broyles, which added the corporation's operating assets to its nonoperating assets. Since Broyles was a qualified expert, it was not unreasonable for the trial court to rely on his opinion. Furthermore, there is no evidence showing that the nonoperating assets were worthless. Accordingly, the trial court's valuation of the property is supported by competent credible evidence and Callos Professional's argument to the contrary is meritless.
 Prejudice of Special Master {¶ 30} In its fourth assignment of error, Callos Professional argues:
 {¶ 31} "The trial court erred in failing to reconsider its July 6, 2006 judgment entry, based on the special master's report, when the special master violated Ohio Judicial Canons 2, 3(E)(1) and 4 in the course of rendering the special master's report, to the prejudice of Appellant."
 {¶ 32} Callos Professional accuses the special master of violating the Judicial Canons by hearing this case and argues the trial court should not have accepted his recommendation because of this violation. As evidence of this violation, Callos Professional cites the fact that the special master filed a grievance with the local bar association against the law firm representing Callos Professional and that the grievance was pending while the special master was acting as a special master. Greco argues that the law firm representing Callos Professional knew of this before the matter was referred to the special master and waived any objection by not raising the issue before the special master issued his report.
 {¶ 33} Special masters, like magistrates, are appointed by a trial court. Therefore, the trial court has the discretion to remove a special master upon motion by a party. In re Disqualification of Wilson (1996),77 Ohio St.3d 1250, 1251. If a party does not move for a special master's removal in a timely manner, then he waives any objection to the *Page 8 
special master's ability to hear the case. Unger v. Unger (Dec. 29, 2000), 12th Dist. No. CA2000-04-009, at 2.
 {¶ 34} We cannot address whether the special master should have presided over the issues in this case because Callos Professional did not bring this issue to the court's attention until its motion for reconsideration, which was filed after the court had already issued a judgment valuing the shares and awarding that amount, plus interest, to Greco.
 {¶ 35} The trial court's decision valuing the shares and awarding that amount, plus interest, to Greco was a final order. R.C. 2505.02(B)(2) defines a final order as, among other things, "[a]n order that affects a substantial right made in a special proceeding." An action under R.C.1701.85 is a special proceeding within the meaning of R.C. 2505.02.Armstrong v. Marathon Oil Co. (1987), 32 Ohio St.3d 397, paragraph five of the syllabus. The fact that the order was not yet appealable does not affect its finality. Equicredit Corp. of America v. Jackson, 7th Dist. No. 03 MA 191, 2004-Ohio-6376, at ¶ 21 ("[T]he lack of Civ.R. 54(B) language does not affect the finality of the trial court's decision; it only affects a party's ability to appeal that decision.).
 {¶ 36} "The Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court." Pitts v.Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, paragraph one of the syllabus. Thus, Callos Professional could not ask the trial court to reconsider its judgment in this case for any reason, no matter how meritorious.
 {¶ 37} Of course, a trial court has some discretion to treat a motion for reconsideration as a motion for relief from judgment under Civ.R. 60(B). Stanley v. First City Co., 7th Dist. No. 00JE27, 2001-Ohio-3278. However, Callos Professional would have to file a separate appeal from that judgment, if and when it is made, and cannot challenge that decision in this appeal since the trial court has yet to rule on that motion. See Cherol v. Seiben Invests., 7th Dist. No. 05 MA 112,2006-Ohio-7048, at ¶ 19; Didick v. Didick, 7th Dist. No. 01 APO 760, 2002-Ohio-5182, at ¶ 12.
 {¶ 38} Since Callos Professional did not bring this issue to the trial court's attention before it entered a final judgment on that claim, it cannot use that issue as a basis for *Page 9 
challenging the trial court's judgment in this appeal. Accordingly, the arguments in Callos Professional's fourth assignment of error are meritless.
 Greco's Demand {¶ 39} In its fifth assignment of error, Callos Professional argues:
 {¶ 40} "The trial court erred in awarding more to Appellee, as a dissenting shareholder, than she demanded, in violation of R.C. 1708.85(C)."
 {¶ 41} Callos Professional contends that R.C. 1707.85(C) prevented the trial court from valuing the shares at an amount greater than Greco demanded. However, the record does not at any point disclose the amount which Greco demanded. For the reasons stated above, we must presume the regularity of the proceedings and, therefore, conclude that Greco presented evidence showing that she demanded a sufficiently high amount at the December 12th hearing. Accordingly, the argument in Callos Professional's fifth assignment of error is meritless.
 Interest {¶ 42} In its final assignment of error, Callos Professional argues:
 {¶ 43} "The trial court abused its discretion in awarding prejudgment interest on the judgment from December 31, 2001, rather than from the date the money should have been paid pursuant to R.C. 1701.85(B)."
 {¶ 44} Callos Professional contends the trial court should have awarded prejudgment interest from November 3, 2006, the dayafter this appeal was instituted, rather than from December 31, 2001, since the later date is when the money "became due and payable." Greco contends that the trial court can award interest from a date it considers equitable and that the trial court did not abuse its discretion when setting an accrual date in this case.
 {¶ 45} Callos Professional's argument is flawed because is it based on the incorrect assumption that the "due and payable" requirement applies to interest awarded under R.C. 1701.85. The "due and payable" language Callos Profesional is using comes from the statute governing prejudgment interest in contract cases, which is not the statute governing this case or from some inherent rule about prejudgment interest. *Page 10 
 {¶ 46} Callos Professional cites two cases for the proposition that prejudgment interest should be assessed from the date when money becomes due and payable, Royal Electric Constr. Corp. v. Ohio State Univ.,73 Ohio St.3d 110, 1995-Ohio-0131, and O'Nesti v. DeBartolo RealtyCorp., 163 Ohio App.3d 609, 2005-Ohio-5056. Each of those cases involved the award of prejudgment interest based on R.C. 1343.03(A). R.C.1343.03(A) allows the award of prejudgment interest from the date that "money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction." Thus, the "due and payable" language in RoyalElectric and O'Nesti is clearly drawn from the statute governing the award of prejudgment interest in the particular types of actions involved in those cases.
 {¶ 47} A review of Ohio law clearly demonstrates that the award of prejudgment interest in other types of cases are governed by other statutes and that the date of accrual is not dependent on when moneys becomes "due and payable." For example, prejudgment interest in cases involving tortious conduct can be awarded "from the date the cause of action accrued." R.C. 1343.03(C). When the Ohio Supreme Court applies this statute, it does not concern itself with when the money becomes "due and payable;" instead, it uses the date set forth in the statute, calling this "mandatory." Musisca v. Massillon Community Hosp.,69 Ohio St.3d 673, 1994-Ohio-0451, syllabus; see also Moskovitz v. Mt. SinaiMed. Ctr, 69 Ohio St.3d 638, 1994-Ohio-0324; Kalain v. Smith (1986),25 Ohio St.3d 157.
 {¶ 48} R.C. 1701.85(B) specifically states that a trial court "shall make a finding as to the fair cash value of a share and shall render judgment against the corporation for the payment of it, with interest at a rate and from a date as the court considers equitable." There is nothing in this statute declaring that a trial court is limited to finding a date that the money became "due and payable" when determining the equitable date for interest to begin accruing. *Page 11 
 {¶ 49} The Ohio Supreme Court has held that a trial court must exercise its discretion when determining how to assess interest under R.C. 1701.85(B). Armstrong at 421. Thus, this court must review the trial court's decision for an abuse of that discretion. English v.Artromick Intern., Inc. (Aug. 10, 2000), 10th Dist. No. 99AP-578, at 6. "An abuse of discretion connotes conduct which is unreasonable, arbitrary, or unconscionable." State ex rel. Russo v. Deters,80 Ohio St.3d 152, 153, 1997-Ohio-0351.
 {¶ 50} In this case, it was not unreasonable for the trial court to award interest from December 31, 2001. This was the date of the vote from which Greco dissented, thereby giving her the ability to bring this cause of action. This is similar to the date that a cause of action accrues in a tort case or the date on which money becomes due and payable in a case governed by R.C. 1343.03(A). Accordingly, the trial court did not abuse its discretion in this regard. The arguments in Callos Professional's sixth assignment of error are meritless.
 Conclusion {¶ 51} Callos Professional raises many arguments in its six assignments of error, but those assignments of error are all meritless. Callos Professional has failed to provide this court with a record sufficient to review many of the issues it raises since it has not provided this court with a transcript or App.R. 9 alternative of a proceeding held on December 12, 2005. Moreover, it failed to raise some issues in a timely fashion. Of its remaining arguments, the evidence supports both the trial court's valuation of Greco's shares and the date from which prejudgment interest on that value would accrue. Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1